MAHONING COUNTY BAR ASSOCIATION v. DiMARTINO.

[Cite as *Mahoning Cty. Bar Assn. v. DiMartino,*
114 Ohio St.3d 174, 2007-Ohio-3605.]

(No. 2007–0319—Submitted March 14, 2007—Decided July 18, 2007.)

Per Curiam.

{¶ 1} Respondent, Dennis DiMartino of Youngstown, Ohio, Attorney Registration No. 0039270, was admitted to the practice of law in Ohio in 1987. On December 7, 1994, this court suspended respondent's license to practice for six months, stayed on conditions, because he failed to timely respond to a client's inquiries about her case, provide that client with a settlement statement, and promptly forward the client's portion of settlement proceeds. *Mahoning Cty. Bar Assn. v. DiMartino* (1994), 71 Ohio St.3d 95, 642 N.E.2d 342.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we now suspend respondent's license to practice for one year but stay the entire suspension on conditions, based upon findings that he violated DR 6–101(A)(3) (prohibiting the neglect of an entrusted legal matter) and 7–101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract of professional employment) while representing a convicted felon. On review, we adopt the board's findings of misconduct and hold that a one-year, stayed suspension is appropriate for respondent's violations of the Code of Professional Responsibility.

{¶ 3} Relator, Mahoning County Bar Association, charged respondent with the cited misconduct, and the parties thereafter entered into a consent-to-discipline agreement. See Section 11 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances

and Discipline ("BCGD Proc.Reg."). A panel of the board recommended that we accept the agreement, in which the parties stipulated to violations of DR 6–101(A)(3) and 7–101(A)(2) and proposed the one-year suspension, to be stayed on the conditions that respondent commit no further misconduct and allow a monitoring attorney to oversee his practice. The board also recommended that we accept the agreement.

{¶ 4} According to the parties' stipulations, respondent neglected and failed to carry out his professional responsibilities in representing Riccardi Lombardi. In September 2003, when respondent agreed to take Lombardi's case, Lombardi was serving time for four felony convictions—three for cocaine-trafficking and one for cocaine possession. Lombardi had pleaded guilty to these crimes in February 2002 and, in accordance with plea agreements, had received mandatory sentences that were not appealable and that made him ineligible for early judicial release.

{¶ 5} From September 2003 until Lombardi discharged him at the end of December 2004, respondent and his client miscommunicated their respective expectations for Lombardi's representation. Lombardi expected respondent to pursue a pro se motion that Lombardi had filed asking the court to either vacate his sentence or allow him to withdraw his guilty plea (the "pro se motion"), a claim to which the state had previously replied with a motion for dismissal or summary judgment. Respondent, however, recalled advising Lombardi that he had little chance of prevailing on that motion, and respondent thought Lombardi wanted him to pursue a reduction of Lombardi's sentence through a motion for judicial release. Lombardi paid respondent $5,000, which respondent accepted as payment for "all expenses from the Trial Court to the Court of Appeals one time."

{¶ 6} Respondent took four months to meet with Lombardi in prison, finally seeing him in early February 2004. Later that month, respondent asked the court for a hearing on a motion for postsentence evaluation that Lombardi's former attorney had filed in December 2002 and that the court had previously denied in January 2003. Lombardi thought that respondent had obtained a hearing on his pro se motion, but when he asked about the result of the hearing, respondent sent him a copy of the court's January 2003 order denying the motion for postsentence evaluation.

{¶ 7} Further miscommunication and confusion ensued. The court scheduled a hearing on the pro se motion for August 11, 2004, and respondent failed to appear. Then, nearly one year after Lombardi had filed it, the court overruled the pro se motion, sending notice of the order to Lombardi, not to respondent. The order explained that no one had opposed the state's motion for dismissal or summary judgment and that Lombardi had not filed the motion within the time allotted for the postconviction relief he had sought.

{¶ 8} Respondent did not appeal the denial of postconviction relief, in part because he did not receive notice from the court and in part because he did not consider himself responsible for pursuing Lombardi's pro se motion. The appeal time elapsed. At some point, respondent realized that he could neither successfully appeal nor obtain judicial release for Lombardi because of the terms of his plea agreements.

{¶ 9} Lombardi ultimately discharged respondent due to his dissatisfaction with respondent's slow and largely unproductive pace. Respondent offered to refund half of his fee, and Lombardi accepted his offer.

{¶ 10} The parties stipulated that respondent sent various letters to Lombardi and attempted to contact some witnesses; however, respondent actually filed only two documents—a notice of appearance and the request for a hearing on the postsentence evaluation motion. He also failed to attend the August 2004 hearing on the pro se motion, and he did not appeal the denial of that relief. The parties agree, however, that Lombardi could not have prevailed on any of those legal actions and that respondent only realized this belatedly.

{¶ 11} In recommending a sanction, the parties, panel, and board took into account the aggravating and mitigating factors in respondent's case. See BCGD Proc.Reg. 10. Although the prior violations occurred more than 12 years ago, respondent has a disciplinary record, an aggravating factor under BCGD Proc. Reg. 10(B)(1)(a). On the other hand, respondent has made restitution to his client, cooperated appropriately in the disciplinary proceedings, and proved his good reputation and character apart from the instant misconduct, all of which are mitigating factors. BCGD Proc.Reg. 10(B)(2)(c), (d), and (e).

{¶ 12} On the board's recommendation, we accept the consent-to-discipline agreement. For his violations of DR 6–101(A)(3) and 7–101(A)(2), respondent is suspended from the practice of law in Ohio for one year. The suspension is stayed, however, on the conditions that respondent commit no further misconduct and that he serve a one-year probation pursuant to Gov.Bar R. V(9), during which a monitoring attorney, to be appointed by relator, shall oversee his practice. If respondent violates the conditions of the stay, the stay will be lifted, and respondent will serve the entire suspension period.

{¶ 13} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER and CUPP, JJ., concur.

David C. Comstock Jr., Bar Counsel, for relator.

Gerald Ingram, for respondent.