[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Mahoning Cty. Bar Assn. v. DiMartino,* Slip Opinion No. 2016-Ohio-536.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-536

MAHONING COUNTY BAR ASSOCIATION *v.* DIMARTINO.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Mahoning Cty. Bar Assn. v. DiMartino,* Slip Opinion No. 2016-Ohio-536.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct and a Rule for the Government of the Bar—Indefinite suspension.*

(No. 2014-2250—Submitted September 15, 2015—Decided February 17, 2016.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2014-080.

————————————

**Per Curiam.**

{¶ 1} Respondent, Dennis Armand DiMartino of Youngstown, Ohio, Attorney Registration No. 0039270, was admitted to the practice of law in Ohio in 1987.

{¶ 2} This court has disciplined DiMartino in three previous cases.  In 1994, we sanctioned him with a stayed six-month suspension because he had failed to

respond to a client's inquiries, failed to provide that client with a settlement statement, and failed to forward the client's portion of settlement proceeds. *Mahoning Cty. Bar Assn. v. DiMartino*, 71 Ohio St.3d 95, 642 N.E.2d 342 (1994). In 2007, after finding that he had neglected a client matter, we imposed a stayed one-year suspension on conditions. *Mahoning Cty. Bar Assn. v. DiMartino*, 114 Ohio St.3d 174, 2007-Ohio-3605, 870 N.E.2d 1166. In 2010, we determined that he had violated those conditions by engaging in dishonest conduct during his stayed suspension. Specifically, when applying for a marriage license in North Carolina, he falsely represented that he was not married, despite the fact that his Ohio divorce case was still pending. Accordingly, we reinstated the one-year suspension from the 2007 case and also suspended him concurrently for six months for his dishonest conduct. *Mahoning Cty. Bar Assn. v. DiMartino*, 124 Ohio St.3d 360, 2010-Ohio-247, 922 N.E.2d 220. On July 5, 2011, respondent was reinstated in both cases. 129 Ohio St.3d 1201, 2011-Ohio-3603, 950 N.E.2d 560; 129 Ohio St.3d 1202, 2011-Ohio-3604, 950 N.E.2d 560.

{¶ 3} In the present matter, relator, Mahoning County Bar Association, has charged DiMartino with misconduct similar to that in his previous disciplinary cases, including client neglect, failing to account for settlement funds, and dishonesty. Based on the evidence presented at the three-member panel hearing, the Board of Professional Conduct recommends that we indefinitely suspend DiMartino, order that he pay restitution to two former clients, and impose conditions upon any potential reinstatement. Neither party has filed objections to the board's report, and based upon our independent review of the record, we accept the board's findings of misconduct and agree with its recommended sanction.

**Misconduct**

{¶ 4} The board found that DiMartino engaged in professional misconduct in two client matters.

2

{¶ 5} In the first matter, Ember Herrington retained DiMartino to represent her in a personal-injury case relating to an automobile accident. DiMartino settled a claim against the tortfeasor and then filed a lawsuit on Harrington's behalf against her insurance carrier, invoking the underinsured-motorist provision of the policy. At that time, Harrington was covered under both the auto and health insurance policies of her mother, Rita Chegar. DiMartino settled the lawsuit with the insurer for $15,000 and deposited the proceeds into his client trust account. He then paid himself $5,000 in attorney fees and issued a check to Harrington for $5,400, but he cannot account for the remainder of the $4,600 from the settlement. In addition, he admitted at the panel hearing that he could not locate a signed copy of the settlement statement specifying the manner in which the funds were disbursed.

{¶ 6} At some point prior to the settlement, Chegar's health insurer asserted a subrogation claim for reimbursement of her daughter's medical expenses. DiMartino negotiated the subrogation claim with the health insurer and agreed to pay a reduced amount from the settlement with the auto insurance carrier. At the panel hearing, he testified that he thought he had sent the health insurer a check for $4,600, but he also admitted that there is no record of the check and that the insurer was never paid, which he acknowledged was his fault. After a collection company for the health insurer later sent Chegar notices informing her that she was still required to reimburse the insurer from the settlement amount, she informed DiMartino that the matter was not yet resolved, and he assured her that he would correct the problem. But he never did.

{¶ 7} After DiMartino failed to return several of Chegar's phone calls, she filed a grievance against him with relator. DiMartino failed to respond to relator's repeated inquiries requesting information about the grievance. In addition, relator later discovered that DiMartino had overdrawn his client trust account. DiMartino also failed to respond to relator's repeated inquiries requesting more information about the overdraft.

**{¶ 8}** In the second client matter, Paul and Kathy Melia retained DiMartino to represent them in a medical-malpractice case. DiMartino did not have the Melias execute a fee agreement. During the litigation, DiMartino failed to appear for hearings or to oppose the defendants' motion for summary judgment, and he failed to return his clients' phone calls. At one point, the Melias appeared for a scheduled mediation but were told by court staff that DiMartino had cancelled it—even though he had not mentioned that to his clients. Nor did he inform them that the court eventually dismissed the case. In fact, he met with them after the court's decision, and although he was aware of the judgment, he did not notify them that their case had been terminated. After the Melias learned of the court's decision, Paul filed a grievance with relator. Once again, DiMartino failed to respond to relator's repeated inquiries regarding the grievance.

**{¶ 9}** Based on this record, the board found—and DiMartino ultimately acknowledged—that he had violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(1), (3), and (4) (requiring a lawyer to inform the client of any circumstances with respect to which the client's informed consent is required, to keep the client reasonably informed about the status of the matter, and to comply as soon as practicable with reasonable requests for information from the client), 1.5(b) (requiring a lawyer to communicate the nature and scope of the representation and the basis or rate of the fee and expenses within a reasonable time after commencing the representation), 1.5(c) (requiring an attorney to have set forth a contingent-fee agreement in writing signed by the client, and if the lawyer becomes entitled to compensation under the agreement, requiring the lawyer to prepare a closing statement and have the client sign the statement), 1.15(a) (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from the lawyer's own property), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or

4

misrepresentation) and former Gov.Bar R. V(4)(G) (now Gov.Bar R. V(9)(G)) (requiring a lawyer to cooperate with a disciplinary investigation).

{¶ 10} We agree with these findings of misconduct. We also agree to dismiss the charges withdrawn by relator.

### Sanction

{¶ 11} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, the sanctions imposed in similar cases, and the aggravating and mitigating factors listed in Gov.Bar R. V(13).

{¶ 12} The board found the following aggravating factors: prior disciplinary offenses, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, lack of cooperation in the disciplinary process, and failure to make restitution. *See* Gov.Bar R. V(13)(B)(1), (2), (3), (4), (5), and (9). At the panel hearing, DiMartino testified that he suffered from depression and that it had contributed to his misconduct. The panel consequently allotted him 14 and 21 days after the hearing, respectively, to submit a psychological report and character references for purposes of mitigation. DiMartino, however, failed to timely submit the mitigation evidence. Accordingly, we concur with the board's findings that no mitigating factors are present here.

{¶ 13} To support its recommended sanction, the board cites *Trumbull Cty. Bar Assn. v. Braun*, 133 Ohio St.3d 541, 2012-Ohio-5136, 979 N.E.2d 326, and *Disciplinary Counsel v. Scacchetti*, 131 Ohio St.3d 165, 2012-Ohio-223, 962 N.E.2d 786. In *Braun*, the attorney neglected a client matter and retained a fee without performing any work. *Braun* at ¶ 4-8, 11. In *Scacchetti*, the attorney commingled personal and client funds in his client trust account, caused the account to be overdrawn, and neglected a client matter. *Scacchetti* at ¶ 4-8. In both cases, the attorneys had prior discipline, failed to establish the presence of any mitigating factors, and failed to cooperate in the disciplinary process. *Braun* at ¶ 12;

*Scacchetti* at ¶ 10. And in both cases, we indefinitely suspended the attorneys. *Braun* at ¶ 14; *Scacchetti* at ¶ 15.

**{¶ 14}** We agree with the board that *Braun* and *Scacchetti* are precedents relevant to this case. An indefinite suspension here is consistent with our "rule that an attorney's neglect of legal matters and failure to cooperate in the ensuing disciplinary investigation warrant an indefinite suspension." *Disciplinary Counsel v. Mathewson*, 113 Ohio St.3d 365, 2007-Ohio-2076, 865 N.E.2d 891, ¶ 19.

### Conclusion

**{¶ 15}** For the reasons explained above, we accept the board's recommended sanction. Dennis Armand DiMartino is hereby indefinitely suspended from the practice of law in Ohio, and he is ordered to make restitution in the amount of $4,600 to Ember Herrington and Rita Chegar within 60 days of this court's order. Any future reinstatement is conditioned on DiMartino's submission of proof that he has undergone a mental-health evaluation, has a plan of treatment, and has completed appropriate continuing-legal-education courses in law-office management, specifically in the area of client trust accounts. Costs are taxed to DiMartino.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

David Comstock Jr. and Ronald E. Slipski, Bar Counsel, for relator.

Mark Anthony Hanni, for respondent.

_____