**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cincinnati Bar Assn. v. Fernandez,* **Slip Opinion No. 2018-Ohio-3828.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3828

CINCINNATI BAR ASSOCIATION *v.* FERNANDEZ.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cincinnati Bar Assn. v. Fernandez,* Slip Opinion No. 2018-Ohio-3828.]**

*Attorneys—Misconduct—Multiple violations of the Rules of Professional Conduct—Respondent's law license indefinitely suspended.*

(No. 2017-1409—Submitted January 23, 2018—Decided September 25, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2016-041.

_____

**Per Curiam.**

{¶ 1} Respondent, Justin Enrique Fernandez, of Cincinnati, Ohio, Attorney Registration No. 0062974, was admitted to the practice of law in Ohio in 1994. On September 1, 2016, we publicly reprimanded Fernandez for his failure to provide sufficient information to his client to permit her to make informed decisions about

his plans to achieve her legal objectives. *Cincinnati Bar Assn. v. Fernandez*, 147 Ohio St.3d 329, 2016-Ohio-5586, 65 N.E.3d 724.

{¶ 2} In a formal complaint certified to the Board of Professional Conduct on October 4, 2016, relator, Cincinnati Bar Association, charged Fernandez with multiple violations of the Rules of Professional Conduct arising from his neglect of three client matters, his retention of fees paid by those clients, the overdraft of his client trust account, and his failure to respond to the ensuing disciplinary investigations.

{¶ 3} The parties submitted stipulations of fact and misconduct, aggravating and mitigating factors, and three exhibits. Fernandez was the only witness to testify at his hearing before a panel of the board. The panel issued a report in which it made findings of fact, found that Fernandez had committed all but one of the alleged violations, and recommended that he be indefinitely suspended from the practice of law, with certain conditions placed on his reinstatement.[1] The board adopted the panel's findings and recommended sanction.

{¶ 4} Fernandez objects and urges us to reject the board's finding that he acted with a dishonest or selfish motive. Consistent with the recommendation made by relator, he asks us to attribute mitigating effect to his intermittent homelessness and unspecified mental disorders and suspend him from the practice of law for one year.

{¶ 5} Having reviewed the record, we adopt the board's findings of fact and misconduct, aggravating and mitigating factors, and recommended sanction. Therefore, we indefinitely suspend Fernandez from the practice of law in Ohio and impose conditions on his reinstatement.

---

1. The panel unanimously dismissed an alleged violation of Prof.Cond.R. 5.3(b) (requiring a lawyer who employs and has direct supervisory authority over a nonlawyer to make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer).

**Misconduct**

{¶ 6} Between April and June 2015, Fernandez agreed to assist Cleora Jean Smith and Betty Smith Carpenter with the settlement of their debts and to file a Chapter 7 bankruptcy on behalf of Eddie and Amie Foster. As in Fernandez's prior disciplinary case, these clients were referred to him by Morgan Drexen, Inc., a now defunct California company that provided paralegal and paraprofessional services to his law practice. Fernandez stipulated that Morgan Drexen assisted him in performing "non-formal debt resolution" for his clients.

{¶ 7} In April 2015, the United States District Court for the Central District of California enjoined Morgan Drexen's business operations and froze its assets. Soon thereafter, Morgan Drexen filed for bankruptcy and went out of business. In July 2015, Morgan Drexen's clients were sent letters informing them that Morgan Drexen had filed for bankruptcy and that the attorney who represented them was no longer affiliated with the company. The letters stated, "All administrative and support services will now be provided directly by employees of the law firm you hired to represent you" and "[r]est assured, none of your money is affected by Morgan Drexen's bankruptcy because your lawyers, not Morgan Drexen are responsible for [electronically transferring funds from] your account and holding your money in trust." Those letters were sent on the letterhead of Howard Law, P.C., which bore the California mailing address that Morgan Drexen had used for Fernandez.

{¶ 8} The board found that Fernandez had received $926 from Cleora Jean Smith, $2,618 from Betty Smith Carpenter, and $900 from Eddie and Amie Foster to secure his legal services. Fernandez failed to respond to their efforts to communicate with him, and he confirmed that his voicemail prompt instructed his clients to leave no more than one message per week due to his work volume. Not only did he fail to perform any legal services for these three clients, he failed to

advise the Fosters that they were ineligible to file bankruptcy because their previous one was so recent. Moreover, he failed to refund any money to these four clients.

{¶ 9} On October 19, 2015, relator received a notice from U.S. Bank that one of Fernandez's client trust accounts was overdrawn. In response to that notice and several client grievances, relator sent multiple letters of inquiry to Fernandez by regular and certified mail. Fernandez did not respond to relator's requests for information.

{¶ 10} The parties stipulated and the board found that Fernandez's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(2) (requiring a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished), 1.4(b) (requiring a lawyer to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation), 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive), 2.1 (requiring a lawyer to exercise independent judgment and render candid advice while representing the lawyer's clients), and 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information from a disciplinary authority during an investigation). In addition, the parties stipulated and the board found that Fernandez's conduct with respect to his client trust account violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold funds belonging to a client or third party in a client trust account separate from his own property and to maintain certain records regarding the funds held in that account) and that his failure to respond to relator's inquiries regarding the overdraft of his client trust account constituted an additional violation of Prof.Cond.R. 8.1(b).

{¶ 11} We accept the board's findings of fact and misconduct.

### Recommended Sanction

{¶ 12} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the

4

aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 13} The parties stipulated and the board found that four aggravating factors are present—that Fernandez has a prior disciplinary record, engaged in a pattern of misconduct, committed multiple offenses, and caused harm to his clients, who the board found were particularly vulnerable and in dire need of protection from creditors. *See* Gov.Bar R. V(13)(B)(1), (3), (4), (8).

{¶ 14} The board rejected the parties' stipulation to two mitigating factors—that Fernandez did not act with a selfish or dishonest motive and that he practiced for more than 20 years without incident before being publicly reprimanded in September 2016. Instead, it found as additional aggravating factors that Fernandez had acted with a selfish and dishonest motive and "utterly failed to respond or cooperate in any way with Relator's investigation of this matter." *See* Gov.Bar R. V(13)(B)(2) and (5). The board also expressed its view that Fernandez's apparent cooperation *after* relator filed its complaint should not "ameliorate his willful refusal to respond" to relator's investigation.

{¶ 15} The board rejected relator's recommendation that Fernandez be suspended from the practice of law for one year as being "woefully inadequate to protect the public." Instead, the board found that Fernandez had accepted payments from clients and had then failed to perform any work, conduct that is tantamount to theft, for which the presumptive sanction is disbarment. *See*, *e.g.*, *Disciplinary Counsel v. Horan*, 123 Ohio St.3d 60, 2009-Ohio-4177, 914 N.E.2d 175, ¶ 22-23. Alternatively, the board noted that this matter could also be viewed as one in which an attorney had neglected entrusted legal matters and compounded that misconduct by failing to cooperate in the ensuing disciplinary investigation. The presumptive sanction for such offenses is an indefinite license suspension. *See*, *e.g.*, *Mahoning Cty. Bar Assn. v. DiMartino*, 145 Ohio St.3d 391, 2016-Ohio-536, 49 N.E.3d 1280,

¶ 13-14; *Disciplinary Counsel v. Golden*, 97 Ohio St.3d 230, 2002-Ohio-5934, 778 N.E.2d 564, ¶ 23.

{¶ 16} The board acknowledged Fernandez's testimony that he suffered from mental- health issues and that when he sought the assistance of the Ohio Lawyers Assistance Program ("OLAP"), its professionals recommended that he seek inpatient treatment for those conditions. While the board was sensitive to the possibility that Fernandez may, in fact, be suffering from significant mental or physical illnesses that could affect his ability to practice law in a competent, ethical, and professional manner, it also noted that Fernandez chose not to obtain the recommended treatment for financial reasons. In the absence of medical evidence to substantiate Fernandez's claimed mental disorder as a mitigating factor pursuant to Gov.Bar R. V(13)(C)(7), the board found only that the possibility of its existence rendered the sanction of permanent disbarment "too harsh."[2] The board therefore recommended that we indefinitely suspend Fernandez from the practice of law, order him to make restitution to the affected clients, and place certain conditions on Fernandez's reinstatement.

## Objection to the Recommended Sanction

{¶ 17} Fernandez objects to the board's finding that he acted with a dishonest and selfish motive and argues that the finding is contradicted by his own testimony regarding his gambling addiction and other unspecified and untreated mental disorders. He urges us to take judicial notice that a homeless attorney is likely to have impaired judgment and that poor decision-making, not selfishness or dishonesty, caused his behavior. Based on the remaining evidence, Fernandez

---

2. Gov.Bar R. V(13)(C)(7) provides that a mental-health disorder qualifies as a mitigating factor when all the following factors exist: a diagnosis of a disorder by a qualified healthcare professional, a determination that the disorder contributed to the respondent's misconduct, a sustained period of successful treatment, and a prognosis from a qualified healthcare professional that the attorney will be able to return to the competent, ethical professional practice of law under specified conditions.

contends that the appropriate sanction for his misconduct is a one-year suspension. We disagree.

{¶ 18} Despite Fernandez's claims, we find that the record amply demonstrates that he acted with a selfish motive. His business relationship with Morgan Drexen was driven to maximize profit with high-volume representation by using paraprofessionals to perform much of the work with minimal attorney oversight. Fernandez testified that after entering into a business relationship with Morgan Drexen, he typically had between 100 and 400 clients—as a sole practitioner. He relied on Morgan Drexen to communicate with his clients and admitted that he had had had no personal contact with Cleora Jean Smith ten months after he commenced her representation. He took his clients' money, relied on Morgan Drexen to do the work, and failed to adequately monitor the status of his clients' legal matters.

{¶ 19} When asked if it was possible that there were other clients for whom he charged fees that were not earned, Fernandez stated that he could not give a definitive answer, explaining, "[O]ne of the weak points of the Morgan Drexen interaction with attorneys was attorneys were heavily dependent on the software and information systems and the paraprofessionals that they put together; and I don't—well, I haven't ever really closely reviewed any of the software data to see what was done and what wasn't done." Ultimately, he admitted that he had just taken on too many clients.

{¶ 20} Even more troubling than Fernandez's lax oversight of his clients' legal matters was his testimony regarding the management of the client-trust account that Morgan Drexen had established for him. Although Fernandez claimed that the account was his, when he was questioned about who had signature authority for the account, he responded, "Well, I definitely should have had signature authority, but I—I—I hope it doesn't turn out that there's other signature authority there. It should have been mine alone." When asked how he got paid, however,

Fernandez suggested that others had signature authority for the account, explaining that when a client made a payment, his "paraprofessionals at Morgan Drexen should put the money in the trust account; and then, as the fees are earned, withdraw that money, put [it] in the general business account, and pay [him] from the general business account." But Fernandez ultimately admitted that he did not know how the money moved because he *never* reviewed the banking records. His misconduct is far more serious than his neglect of three client matters, his failure to refund unearned fees, and his failure to maintain required trust-account records, because he completely abdicated his duty to safeguard the client funds entrusted to his care.

{¶ 21} At the panel hearing, Fernandez testified that he "was having some mental health issues" and had lost his home to foreclosure the year before the charged misconduct began. He has furthermore admitted that he has a gambling problem and that his problems are not of a short-term or acute character, but rather that they have resulted in "repeated bouts of homelessness." He has presented no evidence that those issues have been diagnosed by a qualified healthcare professional, that they contributed to his misconduct, that he has achieved a sustained period of successful treatment, or that he has received a prognosis from a qualified healthcare professional that he will be able to return to the competent, ethical professional practice of law. *See* Gov.Bar R. V(13)(C)(7). Furthermore, at oral argument, Fernandez confirmed that he had received *no treatment* for those issues—despite OLAP's recommendation that he seek inpatient treatment—and he suggested that if he were not living with a friend, he would still be homeless.

{¶ 22} Despite Fernandez's argument, we find that the record plainly demonstrates that he acted with a selfish—though perhaps not dishonest—motive and that his lax business practices, poor judgment, and mental-health issues present an ongoing danger to the public. We are not unsympathetic to Fernandez's plight, but given the seriousness of his misconduct and the significant effects he admits that his untreated mental-health issues have had on the management of his personal

affairs, we are convinced that an indefinite suspension with conditions for reinstatement, followed by a period of monitored probation once he is reinstated, is the appropriate sanction in this case.

{¶ 23} Accordingly, Justin Enrique Fernandez is indefinitely suspended from the practice of law in Ohio, and any reinstatement shall be subject to the following conditions:  that he (1) submit proof, within 60 days of our order, that he has made restitution of $926 to Cleora Jean Smith, $2,618 to Betty Smith Carpenter, and $900 to Eddie and Amie Foster, (2) complete 12 hours of continuing legal education with an emphasis on law-office and client trust-account management, in addition to the requirements of Gov.Bar R. X, (3) submit to an evaluation by a qualified healthcare professional to investigate the possible existence of a disorder as defined in Gov.Bar R. V(35) and comply with any treatment recommendations made as a result of that evaluation, and (4) show evidence that he has not engaged in further misconduct.  Upon reinstatement, Fernandez is to serve a two-year term of monitored probation in accordance with Gov.Bar R. V(21).  Costs are taxed to Fernandez.

Judgment accordingly.

O'CONNOR, C.J., and FRENCH, HALL, and FISCHER, JJ., concur.

KENNEDY, J., dissents, with an opinion joined by O'DONNELL and DEWINE, JJ.

MICHAEL T. HALL, J., of the Second District Court of Appeals, sitting for O'NEILL, J.

_____

**KENNEDY, J., dissenting.**

{¶ 24} Because the record does not support the findings of the Board of Professional Conduct that respondent, Justin Fernandez, acted with a selfish motive and deserved no credit for his cooperation in the disciplinary process, I dissent from the majority's decision to adopt its recommendation that we indefinitely suspend

him from the practice of law. Rather, in my view, the one-year suspension recommended by relator, the Cincinnati Bar Association, is the appropriate sanction in this case.

{¶ 25} Fernandez contracted with a California company called Morgan Drexen, Inc., to provide him with outsourced paraprofessional, intake, accounting, and marketing and advertising services. Through this agreement, Morgan Drexen referred prospective clients in Ohio seeking debt relief to Fernandez, and these clients authorized direct deposits from their bank accounts to trust accounts opened and managed by Morgan Drexen. Fernandez might have represented as many as 500 clients at one time, and monthly withdrawals were collected by Morgan Drexen on Fernandez's behalf until the client had paid a sufficient amount to offer a settlement to the client's creditors. Morgan Drexen also paid fees to the paraprofessionals and to Fernandez once they were earned.

{¶ 26} The United States District Court for the Central District of California enjoined Morgan Drexen's business operations in April 2015 for charging an unlawful upfront fee for debt-relief services and engaging in deceptive advertising. *Consumer Fin. Protection Bur. v. Morgan Drexen, Inc.*, 101 F.Supp.3d 856, 860-861, 875 (C.D.Cal.2015). According to the court, Morgan Drexen began contracting with attorneys in 2010 to bundle its services with bankruptcy services in order to continue collecting upfront fees; "Morgan Drexen received 85% to 95% of the fees paid by the customer, and the attorneys received 5% to 15%." *Consumer Fin. Protection Bur. v. Morgan Drexen*, *Inc.*, C.D.Cal. No. 8:13-cv 01267-JLS JEM, 2015 WL 12712302, *1 (July 6, 2015), *rev'd on other grounds by Consumer Fin. Protection Bur. v. Howard Law, P.C.*, 671 Fed.Appx. 954 (9th Cir.2016).

{¶ 27} Morgan Drexen filed for bankruptcy protection and went out of business the following June, transferring its business-support services to Howard Law, P.C. In July 2015, clients received letters on "Howard Law, P.C." letterhead informing them of Morgan Drexen's bankruptcy and advising that their lawyers

were no longer affiliated with the company but would continue to represent them and hold their money in trust. Fernandez then apparently received support services from Howard Law.

{¶ 28} In September 2015, the Cincinnati Bar Association filed an amended complaint charging Fernandez with professional misconduct related to a client who had contacted Morgan Drexen to settle her debts, and on September 1, 2016, we issued a public reprimand based on his failure to have any direct communication with her during the four months that he represented her. *Cincinnati Bar Assn. v. Fernandez*, 147 Ohio St.3d 329, 2016-Ohio-5586, 65 N.E.3d 724, ¶ 1, 19.

{¶ 29} On October 4, 2016, the Cincinnati Bar Association filed a second complaint against Fernandez alleging similar misconduct involving three additional clients who had been referred to him by Morgan Drexen. Although he failed to respond to letters of inquiry from the relator, it is not disputed by the parties that he cooperated in the disciplinary process after the investigation stage. Fernandez stipulated to his misconduct, acknowledged his wrongdoing, and admitted that a suspension would be appropriate. In addition, the parties stipulated to aggravating factors (prior discipline, a pattern of misconduct, multiple offenses, and harm to the victims) and mitigating factors (absence of a dishonest or selfish motive and the lack of discipline from Fernandez's licensure in 1994 to his public reprimand in 2016).

{¶ 30} The board found that relator had proved violations of the Professional Rules and the aggravating factors by clear and convincing evidence, but it rejected the stipulation regarding mitigating factors and found three additional aggravating factors: (1) "[t]he victims of Respondent's misconduct were particularly vulnerable because Respondent deprived these clients of financial resources and neglected their needs at a time that they were in dire need of assistance and protection from creditors," (2) "Respondent utterly failed to respond or cooperate in any way with Relator's investigation of this matter," and (3)

"Respondent acted with a selfish and dishonest motive." It also indicated that Fernandez's conduct in taking fees for work that he failed to perform "is tantamount to theft."

{¶ 31} Based on its findings, the board recommends that we indefinitely suspend Fernandez from the practice of law in Ohio.

{¶ 32} There is no doubt that Fernandez fell well short of the professional standards demanded of all attorneys, and this case raises serious questions regarding whether his relationship with Morgan Drexen and its paralegals complied with Prof.Cond.R. 5.3 and 5.4 pertaining to an attorney's association with nonlawyers. Nonetheless, the record does not contain clear and convincing evidence that Fernandez acted with a selfish motive or failed to cooperate in the disciplinary process.

{¶ 33} First, with respect to two of the clients—Betty Smith Carpenter and Cleora Jean Smith—the evidence does not demonstrate that Fernandez collected a fee and then failed to perform the work he agreed to complete. The debt-relief services he supplied to his clients involved their making monthly payments to build up a sufficient reserve over a period time to offer creditors a settlement. Clients reached out directly to Morgan Drexen, gave that company their financial information, and authorized it to withdraw money from their accounts, and the nature of the debt-relief services required a sufficient amount of money to be accumulated over a period of time before an offer could be made to settle the debt with the creditor. These cases could continue for more than five years before settlements could be completed. And although Fernandez received client funds into his trust account and did not issue a refund, the clients did not know what became of their money. For instance, Jack Smith averred that his mother had had $374 per month withdrawn from her account from July 2015 to February 2016, but he had "not been informed of where the money went, or who was paid, or if any settlements with creditors were reached." Similarly, Cleora Jean Smith stated in her affidavit

that funds had been withdrawn from her account, but she did not assert that creditors had not been paid or that no work had been completed.

{¶ 34} And although attorney Richard A. Goulder's affidavit indicated that Fernandez had collected $900 to file a bankruptcy for two other clients, Eddie and Amie Foster, and that Fernandez had not refunded that fee, Fernandez testified that Morgan Drexen's paralegals had performed the intake for his bankruptcy cases and he had never spoken to the Fosters or advised them. Fernandez also testified that he did not believe that he owed any clients money, but he had not reviewed any banking records from his trust account to know where client funds had gone. It does not appear that there has ever been an accounting made, and at most, relator asserted that it was "not aware that any work was performed by Mr. Fernandez."

{¶ 35} The board relied on *Disciplinary Counsel v. Horan*, 123 Ohio St.3d 60, 2009-Ohio-4177, 914 N.E.2d 175, but that case is distinguishable. There, the attorney fraudulently altered fee applications to seek payment for court-appointed work that she had not performed. She also accepted fees from numerous clients but failed to appear at hearings or complete the work promised; the clients sought refunds but were unable to contact the attorney, who had signed some checks over to a relative. The attorney was also named a guardian ad litem in charge of a minor beneficiary's trust account, with the funds to be paid to the beneficiary on his 18th birthday, but after turning 18, the beneficiary was unable to locate the money. We disbarred the attorney for stealing from her clients.

{¶ 36} There is a distinction between an attorney's collecting fees with no intention of completing the work and no intention of giving a refund—which is tantamount to theft and evinces a selfish and dishonest motive—and an attorney who agrees to perform work but out of neglect fails to do so. For example, in *Columbus Bar Assn. v. Albrecht*, 106 Ohio St.3d 301, 2005-Ohio-4984, 834 N.E.2d 812, the attorney accepted retainers and then failed to complete work promised to three clients, but we nonetheless accepted the board's finding that the attorney

lacked a dishonest or selfish motive.  More recently, in *Toledo Bar Assn. v. Crosser*, 147 Ohio St.3d 499, 2016-Ohio-8257, 67 N.E.3d 789, the attorney accepted a retainer, failed to perform the work, lied to the client to cover up her neglect, and then failed to timely refund the fee, and we accepted the finding that she acted without a selfish motive.

{¶ 37} Accordingly, the board's analogy of Fernandez's case to one involving an attorney who misappropriated funds and who acted with a selfish motive is not well taken.  The evidence shows that Fernandez relied on Morgan Drexen and its paralegals to help him manage his practice, that Morgan Drexen managed the fees paid by the clients it solicited, and that Morgan Drexen paid Fernandez when he earned his fees.  However, since the board rejected the violation of having an improper relationship with nonlawyers, the remaining evidence indicates that Fernandez took on too many clients and neglected their cases.  There is insufficient proof that he acted with a selfish motive, however.

{¶ 38} The board also justified its recommended sanction on its finding that Fernandez exhibited a "complete failure" to cooperate with the disciplinary investigation.  Although Fernandez admitted failing to respond to any of relator's inquiries before it filed the complaint in this case, he admitted his misconduct and accepted responsibility for it during the course of these proceedings, communicating and cooperating with relator in proceedings before the board, stipulating to the admissibility and truth of the testimony in his victims' affidavits, and waiving his right to cross-examine them.  Further, relator admits in its brief that Fernandez's cooperation aided the disciplinary process.  This court has recognized that an attorney's eventual cooperation in the disciplinary process is a basis to impose a lesser sanction.  *See, e.g., Disciplinary Counsel v. Davis,* 121 Ohio St.3d 84, 2009-Ohio-500, 902 N.E.2d 25, ¶ 16; *Columbus Bar Assn. v. Dice*, 120 Ohio St.3d 455, 2008-Ohio-6787, 900 N.E.2d 189, ¶ 10-11; *Disciplinary Counsel v. Boulger*, 88 Ohio St.3d 325, 327, 725 N.E.2d 1112 (2000).

**{¶ 39}** Tellingly, in its independent review of Fernandez's objection to the board's recommendation, the majority does not marshal a single decision from this court supporting imposition of an indefinite suspension in this case, and in my view, a lesser sanction is warranted.

**{¶ 40}** This case is analogous to *Cincinnati Bar Assn. v. Larson*, 124 Ohio St.3d 249, 2009-Ohio-6766, 921 N.E.2d 618. There, the attorney failed to perform work promised to three clients, did not promptly refund unearned fees, and failed to respond to letters of inquiry involving the grievance. He demonstrated problems managing an expanding number of cases, and "his hearing testimony showed that he had made few concrete changes for the future. He repeatedly referred to a general ambition to limit the number of his cases, the counties in which he practiced, and the time he spent out of the office. But these goals remain largely aspirational." *Id*. at ¶ 40. But unlike Fernandez, the attorney had also engaged in a course of conduct to conceal his failure to competently pursue claims on the clients' behalf, and the presumptive sanction for this misconduct was a two-year license suspension; based on the circumstances, we imposed a two-year suspension with 12 months stayed on conditions. *Id*. at ¶ 19.

**{¶ 41}** In this case, Fernandez accepted more clients than he could competently represent, failed to monitor their cases and keep track of and account for client funds, and effectively allowed nonlawyers to run his practice. However, there is no proof that he misappropriated client funds, acted with a selfish or dishonest motive, or completely failed to cooperate in the disciplinary process.

**{¶ 42}** Accordingly, I would adopt the recommendation of relator in this case and impose a one-year license suspension with reinstatement subject to the conditions recommended by the board.

O'DONNELL and DEWINE, JJ., concur in the foregoing opinion.

_____

Edwin W. Patterson III, Bar Counsel; Taft, Stettinius & Hollister, L.L.P., and Justin D. Flamm; and Zingarelli Law Office, L.L.C., and Nicholas A. Zingarelli, for relator.

Justin Enrique Fernandez, pro se.

_____