**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Delay,* Slip Opinion No. 2019-Ohio-2955.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-2955

DISCIPLINARY COUNSEL *v.* DELAY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Delay,* Slip Opinion No. 2019-Ohio-2955.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Indefinite suspension.*

(No. 2018-1743—Submitted January 30, 2019—Decided July 23, 2019.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-046.

_____

**Per Curiam.**

{¶ 1} Respondent, Brendan Edward Delay, of Westlake, Ohio, Attorney Registration No. 0036929, was admitted to the practice of law in Ohio in 1986.

{¶ 2} In an amended complaint filed with the Board of Professional Conduct on March 30, 2018, relator, disciplinary counsel, charged Delay with multiple violations of the Rules of Professional Conduct arising from his representation in four separate client matters. At a hearing before a panel of the

board, the parties presented testimony from 14 witnesses, including Delay, and submitted more than 120 exhibits.

{¶ 3} The panel issued a report containing findings of fact and misconduct and recommended that Delay be indefinitely suspended from the practice of law and ordered to make restitution to his clients in three of the cases. In addition, the panel recommended that as conditions on his reinstatement, Delay be required to submit to an Ohio Lawyers Assistance Program ("OLAP") evaluation and comply with any treatment or counseling recommendations arising from that evaluation in addition to the requirements of Gov.Bar R. V(25). The board adopted the panel's report in its entirety, and no objections have been filed.

{¶ 4} After reviewing the record, we accept the board's findings of fact and misconduct and indefinitely suspend Delay from the practice of law in Ohio.

**Misconduct**

*Count One—The Karoub Matter*

{¶ 5} In September 2015, Adam Karoub paid Delay a flat fee of $2,500 to represent him in a breach-of-contract action filed against him in the Toledo Municipal Court.

{¶ 6} Delay attended a court-ordered mediation in mid-October 2016 and sought two extensions of time to respond to the plaintiff's October 28 motion for summary judgment. But Delay never responded to the motion, purportedly because Karoub had no legitimate defense. Delay testified that he sent a copy of the motion to Karoub, but Karoub and his business partner denied receiving it and the panel found their testimony to be more credible.

{¶ 7} On December 30, the court granted summary judgment to the plaintiff and entered a $13,000 judgment against Karoub. Delay did not inform Karoub of the judgment. Instead, on January 3, 2017, he sent an e-mail to Karoub's business partner stating that the plaintiff's settlement demand was $10,000. Karoub discovered the judgment in February 2017 after his credit-monitoring program

2

notified him of a drop in his credit score. After Delay failed to respond to Karoub's e-mail inquiry about the judgment, Karoub retained new counsel.

{¶ 8} In the course of relator's investigation, Delay produced an acknowledgment that he did not carry malpractice insurance and said that he had sent it to Karoub and that Karoub had returned a signed copy. The signed copy that Delay produced, however, bears a signature date of September 2, 2014, nearly a year before Karoub first contacted Delay. And Karoub testified that the signature was not his and that Delay did not tell him that he did not carry malpractice insurance or ask him to sign an acknowledgment to that effect. The board found that Delay presented a fraudulent document to relator in an attempt to substantiate his false statement to relator. The board also found that Delay did not refund his unearned flat fee.

{¶ 9} The board found that this conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment), 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Based on documentary evidence demonstrating that Delay did not respond to relator's initial letters of inquiry and subsequently presented a fraudulent document to relator, the board found that he violated Prof.Cond.R. 8.1(b) and Gov.Bar R. V(9)(G) (both requiring a lawyer to cooperate with a disciplinary investigation). The panel unanimously dismissed one additional alleged violation based on the insufficiency of the evidence.

*Count Two—The Baker Matter*

{¶ 10} In 2014, Ashley Baker retained Delay following an automobile accident. Baker testified that she never received a written fee agreement from Delay. Although Delay testified that he sent her a written contingent-fee agreement and that she told him she had signed it, he admitted that he did not possess a signed agreement.

{¶ 11} Baker authorized Delay to communicate with her mother, Brenda Riggs, regarding her claims, and Riggs left numerous messages with Delay's secretary about Baker's desire to settle the case. After Delay failed to return Riggs's calls, on April 4, 2015, Baker sent Delay a letter terminating his representation. Baker sent a copy of the letter to the at-fault driver's insurance company.

{¶ 12} After receiving Baker's letter, insurance-company representatives attempted to reach Delay to confirm his termination. Delay eventually left one of the representatives a voicemail message stating that he still represented Baker and had an attorney's lien on the case. On August 31 and September 15, 2015, another representative sent Delay letters asking him to confirm the status of his representation and to provide a copy of his lien. Ultimately, the representative withdrew a settlement offer due to Delay's failure to respond and the uncertainty regarding his claimed lien.

{¶ 13} On October 5, 2015, Delay e-mailed the representative, again claiming that he had an attorney's lien and stating that he trusted she had received his "earlier communication." Although the representative responded within an hour of receiving the e-mail—and twice more later—to request a copy of the supposed communication, Delay did not reply.

{¶ 14} In May 2016, the representative notified Baker that the end of the statute-of-limitations period on her personal-injury claim was approaching and that the claim had not settled, because Delay had refused to verify his lien. Thereafter,

relator informed the representative that Delay did not have a contingent-fee agreement with Baker and that the representative could proceed to settle Baker's claim.

{¶ 15} After Baker agreed to a settlement, Delay e-mailed the representative to request that she issue two checks—one to him for 30 percent of the settlement amount and one to Baker for the remaining 70 percent—claiming that he could not rely on Baker to pay his attorney fees. The representative informed him that she was not able to honor his lien and declined his request for information regarding the settlement amount on the ground that Baker was not his client.

{¶ 16} Despite having received Baker's termination letter and knowing that her claim had settled, Delay filed a lawsuit against two other drivers involved in the auto accident without Baker's knowledge or consent. On October 26, 2016, Delay called Riggs and told her that Baker needed to attend a hearing the next day. Riggs informed him that Baker would not attend, because her claim had settled. The next day, Baker received a copy of the hearing notice on which Delay had written "October 16, 2016" and "Ashley: You have to be there." Baker was then concerned that she would be assessed court costs or held in contempt because she had not attended the hearing.

{¶ 17} At his disciplinary hearing, Delay testified that he could not confirm that Baker had terminated his representation, because he had not received her letter himself and did not trust the copies forwarded to him by the insurance company. Delay also claimed that he filed suit to protect Baker's interests at relator's instruction, but the panel did not find Delay's testimony to be credible.

{¶ 18} The board found that Delay's conduct in the Baker matter violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.2(a) (requiring a lawyer to abide by the client's decisions concerning the objectives of representation and to consult with the client as to the means by which

they are to be pursued), 1.3, 1.4(a)(4), 1.5(c)(1) (requiring a lawyer to set forth a contingent-fee agreement in a writing signed by both the client and the lawyer), 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). Citing Delay's repeated failure to respond to relator's requests for information regarding this matter and his failure to appear for a scheduled deposition despite having been served with a subpoena, the board also found that he violated Prof.Cond.R. 8.1(b) and Gov.Bar R. V(9)(G). In addition, the board found that Delay's refusal to cooperate with his former client and the insurance company to effectuate settlement of Baker's claims was so egregious as to constitute a separate violation of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). *See Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21.

*Count Three—The Gracic Matter*

{¶ 19} Mato and Bosiljka Gracic met Delay in August 2012 to discuss concerns regarding a gas company's lease on property they owned in Harrison County.[1] Delay told them that they had a good case and that he would prepare to file suit on their behalf. In March 2013, the Gracics signed a fee contract and paid Delay $3,500 of the agreed $7,000 fee and Delay stated that he would file suit in May. Delay did not deposit their check into his client trust account even though his fee agreement did not state that it was earned upon receipt.

{¶ 20} After signing the fee contract, the Gracics had difficulty getting Delay to respond to their inquiries. In June 2013, they received interrogatories from Delay that bore a caption for filing in Columbiana County but did not have a case number. There was no cover letter explaining what, if anything, they needed to do. After Mrs. Gracic made numerous attempts to reach him by phone and e-mail,

---

1. The Gracics immigrated to the United States from their native Bosnia in the 1970s. Because English is their second language, their adult son sometimes translated for them.

Delay finally told her that if she sent him another $1,000, he would file suit before the Gracics went on vacation abroad. Although part of that check was intended to cover the filing fee, after receiving it, Delay did not deposit it into his client trust account.

{¶ 21} Unable to reach Delay after she and her husband returned to the country, Mrs. Gracic went to the Columbiana County courthouse, where the clerk told her that no complaint had been filed. Mrs. Gracic then drove to Delay's office and waited four hours to ask him about the case, but he never arrived. Delay finally responded to her communications after she threatened to contact the news media. During a September 2013 meeting with the Gracics and their son, Delay made excuses for failing to work on their case but assured them that he would communicate with them going forward.

{¶ 22} In late September or early October, Delay gave the Gracics a complaint. They filed it in the Harrison County Court of Common Pleas and paid the filing fee of $250. After Delay again stopped communicating with them, they went to the courthouse and learned that a hearing had been scheduled for February 24, 2014.

{¶ 23} During the February 2014 hearing, the trial judge instructed Delay to file a pretrial statement within seven days and issued an order memorializing the instruction—and subsequently, two additional orders regarding the pretrial statement—but Delay never complied. At Delay's disciplinary hearing, Mrs. Gracic testified that after the February 24 hearing, Delay explained that "the judge asked him to file something else and then he was going to do that. And if it doesn't work we'll have court on September 11, 2014." For his part, Delay denied that the court verbally ordered him to file a pretrial statement and claimed that he did not receive any written order to do so, because the court did not have his correct address. The panel found Delay's testimony to be blatantly false.

**{¶ 24}** In the meantime, between March and June 2014, Delay failed to respond to several inquiries from the Gracics' son regarding the status of their case. In late summer, the Gracics went to the courthouse and learned that the court had dismissed their claim on April 4, 2014. Delay never informed the Gracics that a counterclaim had been filed against them or that their claim had been dismissed. On September 11, 2014, Delay sent the Gracics' son an e-mail that said, "[N]o court today just got out of jury duty." The Gracics never heard from him again.

**{¶ 25}** At the disciplinary hearing, Delay admitted that he did not act in the Gracics' best interest. He also acknowledged that he did not maintain any billing records for his work on their case and that he had not returned any portion of their $4,500 fee. He stated, however, that he was willing to refund their entire fee plus the $250 filing fee they had paid to the court.

**{¶ 26}** The board found that Delay's conduct violated Prof.Cond.R. 1.1, 1.3, 1.4(a)(3), 1.4(a)(4), 1.15(c) (requiring a lawyer to deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses are incurred), and 1.16(e). Based on documentary evidence demonstrating that Delay repeatedly failed to respond to relator's requests for information regarding this matter, the board also found that he violated Prof.Cond.R. 8.1(b) and Gov.Bar R. V(9)(G).

*Count Four—The Riggs Matter*

**{¶ 27}** Around 2010, William and Brenda Riggs—who had a longstanding relationship with Delay—met with Delay to discuss the modification or rescission of an oil-and-gas lease of their property. Approximately a year and a half later, Delay told them they had a case. They signed a written fee agreement for Delay to "negotiat[e] * * * any replacement oil and gas lease." Brenda testified that Delay told them he would fight the arbitration clause in their existing lease but that he never told them he would terminate his representation if the case went to arbitration. The Riggses understood that he was to "finish everything."

**{¶ 28}** Delay filed suit on behalf of the Riggses on September 16, 2011. In December, the trial court stayed the action pending arbitration of the dispute. Delay did not inform the Riggses of the stay or that he had filed an appeal on their behalf. In February 2014, the court of appeals determined that the Riggses' arguments—with the exception of a claim to quiet title—were meritless, held that any issues regarding the validity of the lease had to be resolved in arbitration, and stayed the quiet-title claim pending arbitration. Delay did not notify the Riggses of the court of appeals' decision and in a March 14, 2014 letter, he falsely told them that the court had agreed with his argument that the issues regarding the lease "should be decided in court not in arbitration." He also informed them that although he had received a $5,000 settlement offer, he would struggle to get them more money.

**{¶ 29}** The Riggses eventually received a November 12, 2014 order from the trial court that dismissed their case for want of prosecution. Delay did not return the Riggses' telephone calls over the next several days. When Mrs. Riggs finally reached him, he told her that the case was not over—but the Riggses never heard from him again. The Riggses paid $400.86 in court costs following the dismissal of their complaint.

**{¶ 30}** In defending the grievance, Delay produced three letters that he purportedly had sent to the Riggses to inform them that they needed to decide whether to pursue arbitration and pay the associated fees—but Mrs. Riggs testified that she did not receive those letters. And at the disciplinary hearing, an attorney for the defendants in the underlying action testified and produced e-mails demonstrating that he had offered to settle the case for $9,000. Although Delay claimed that he had conveyed the offer to the Riggses in person, he acknowledged that he did not send them written confirmation of that offer or document their rejection in writing.

**{¶ 31}** The board found that Delay's conduct in this matter violated Prof.Cond.R. 1.1, 1.3, 1.4(a)(3), 1.4(a)(4), and 8.1(a). Citing Delay's repeated

failure to respond to relator's requests for information regarding this matter and his failure to appear for a scheduled deposition, the board also found that he violated Prof.Cond.R. 8.1(b) and Gov.Bar R. V(9)(G). The panel unanimously dismissed one additional alleged violation.

**Sanction**

**{¶ 32}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 33}** The board found that eight of the nine aggravating factors enumerated in Gov.Bar R. V(13)(B) are present—a dishonest or selfish motive; a pattern of misconduct; multiple offenses; lack of cooperation in the disciplinary process, including Delay's failure to comply with a subpoena for his deposition; the submission of false evidence, false statements, or other deceptive practices during the disciplinary process; Delay's refusal to acknowledge the wrongful nature of his misconduct; the vulnerability of and resulting harm to the victims of his misconduct; and the failure to make restitution. *See* Gov.Bar R. V(13)(B)(2) through (9). In addition, the board found that Delay was unrepentant and unremorseful about his misconduct and the harm he had caused to his clients. Delay's only concessions in that regard were that he "[f]elt bad" when he saw Mrs. Gracic cry during the hearing and his admission that he had let her down.

**{¶ 34}** The board found that just one mitigating factor is present—that Delay does not have a prior disciplinary record. *See* Gov.Bar R. V(13)(C)(1). Although Delay called one witness to testify regarding his character and reputation, that person testified that he had not interacted with Delay in a professional capacity in more than 12 years. The witness was also unaware of the allegations in the complaint until he testified and stated that his opinion regarding Delay's

competence as an attorney would change if those allegations were proved in this proceeding.

{¶ 35} In his closing argument, Delay suggested that he should be required to make restitution to Karoub and the Gracics and that he should be publicly reprimanded for failing to keep the Gracics informed about the status of the matter and failing to provide them with written notification that he would no longer be representing them. Delay did not comply with the panel's request that he provide a written closing brief.

{¶ 36} Relator, in contrast, argued that Delay should be permanently disbarred. In support, relator cited *Columbus Bar Assn. v. Nyce*, 152 Ohio St.3d 501, 2018-Ohio-9, 98 N.E.3d 501, for the proposition that " 'when a lawyer testifies falsely during the disciplinary process, attempts to impede, obstruct, or protract the disciplinary process, or persistently refuses to accept responsibility for his or her conduct * * * he or she may no longer be worthy of the trust and confidence of the public and the courts.' " (Ellipsis sic.) Relator's closing brief at 18, quoting *id.* at ¶ 39.

{¶ 37} Delay denied having used any substance that would have affected his memory or judgment from 2013 until the disciplinary hearing and stated that during that period, there had been no events in his life that would have affected his ability to handle his clients' affairs in a professional manner. Nonetheless, the panel recognized that Delay had a tendency to focus on "unimportant minutia" and expressed concern that underlying psychological or emotional issues may have impaired his judgment and affected his ability to recognize the wrongfulness and seriousness of his actions. Therefore, the panel recommended that the appropriate sanction for Delay's misconduct is an indefinite suspension, combined with conditions on his reinstatement—namely, that he submit to an OLAP evaluation and comply with any treatment or counseling recommendations from OLAP. The panel further recommended that Delay be ordered to make full restitution of $4,750

to the Gracics, $4,048.75 to Karoub (representing the $2,500 flat fee he paid Delay and the $1,548.75 in additional legal fees Karoub incurred in resolving the judgment against him), and $400.86 to the Riggses.

{¶ 38} The panel found that an indefinite suspension would be consistent with this court's general rule that "an attorney's neglect of legal matters and failure to cooperate in the ensuing disciplinary investigation warrant an indefinite suspension," *Disciplinary Counsel v. Mathewson*, 113 Ohio St.3d 365, 2007-Ohio-2076, 865 N.E.2d 891, ¶ 19. In support, the panel cited five additional cases in which we indefinitely suspended attorneys who had engaged in misconduct that included combinations of providing incompetent representation, neglecting client matters, failing to reasonably communicate with clients about their representation, various trust-account violations, and failing to fully cooperate in the resulting disciplinary investigations.

{¶ 39} For example, in *Lorain Cty. Bar Assn. v. Johnson*, 151 Ohio St.3d 448, 2017-Ohio-6869, 90 N.E.3d 837, we indefinitely suspended an attorney and ordered him to pay restitution of approximately $13,000 to 15 former clients. Johnson's misconduct included multiple instances of neglecting client matters, failing to reasonably communicate with clients, failing to notify clients that he did not carry professional-liability insurance, failing to refund unearned fees to clients on the termination of his representation, and failing to cooperate in disciplinary investigations. Aggravating factors included a dishonest and selfish motive, a pattern of misconduct, multiple offenses, failure to cooperate in the investigatory process, harm to multiple clients, failure to make restitution, and Johnson's admission that in his 20 years of practice, he had never properly documented client funds in his possession and rarely used his client trust account. The only mitigating factors were Johnson's lack of a prior disciplinary record and his eventual cooperation in the disciplinary proceeding.

**{¶ 40}** And in *Mahoning Cty. Bar Assn. v. DiMartino*, 145 Ohio St.3d 391, 2016-Ohio-536, 49 N.E.3d 1280, we indefinitely suspended an attorney who had engaged in professional misconduct in two client matters and ordered him to pay restitution to one client. In the first case, DiMartino had failed to pay a subrogation claim and to account for $4,600 in settlement proceeds set aside for that purpose and had assured the client that he would correct the problem but never did. And in the second case, he had failed to have his client sign a contingent-fee agreement, return the client's phone calls, appear for hearings, oppose a motion for summary judgment, and notify the clients that the court had dismissed the case. DiMartino also had failed to cooperate in the ensuing disciplinary investigation. Aggravating factors included three prior impositions of discipline, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, a lack of cooperation in the disciplinary process, and failure to make restitution. We found that no mitigating factors were present.

**{¶ 41}** We also find *Cincinnati Bar Assn. v. Hoskins*, 149 Ohio St.3d 645, 2016-Ohio-4576, 77 N.E.3d 899, to be instructive. Like Delay, Hoskins had provided incompetent representation, neglected two legal matters, failed to reasonably communicate with several clients, failed to deposit an unearned fee into his client trust account, and engaged in dishonesty during the disciplinary proceeding. No mitigating factors were present, but aggravating factors included a prior disciplinary record, multiple counts of misconduct, Hoskins's refusal to acknowledge the wrongful nature of his conduct, his failure to make timely restitution to one client, false statements and other deceptive practices, and his failure to cooperate in the disciplinary process. We indefinitely suspended Hoskins for that misconduct and conditioned reinstatement on his completion of continuing legal education focused on law-office management and the achievement of a passing score on the Multistate Professional Responsibility Examination.

**{¶ 42}** Based on our review of the record and our precedent, we accept the board's findings of fact and misconduct and agree that an indefinite suspension from the practice of law is the appropriate sanction in this case.

**{¶ 43}** Accordingly, Brendan Edward Delay is indefinitely suspended from the practice of law and shall be required to make the following restitution within 90 days of this decision: $4,048.75 to Adam Karoub, $4,750 to Mato and Bosiljka Gracic, and $400.86 to William and Brenda Riggs. In addition to the reinstatement requirements set forth in Gov.Bar R. V(25), Delay shall be required to demonstrate that he has submitted to an OLAP evaluation and complied with any treatment or counseling recommendations arising from that evaluation. Costs are taxed to Delay.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

Scott J. Drexel, Disciplinary Counsel, and Audrey E. Varwig, Assistant Disciplinary Counsel, for relator.

Brendan Edward Delay, pro se.

_____