DISCIPLINARY COUNSEL *v.* LONGINO.

[Cite as *Disciplinary Counsel v. Longino,*

128 Ohio St.3d 426, 2011-Ohio-1524.]

*Attorneys — Misconduct — Multiple violations of the Rules of Professional Conduct, including the misappropriation of client funds — Permanent disbarment.*

(No. 2010-1646 — Submitted January 4, 2011 — Decided April 6, 2011.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 09-079.

_____

**Per Curiam**.

**{¶ 1}** Respondent, Shondra Collette Longino of Mayfield Heights, Ohio, Attorney Registration No. 0081874, was admitted to the practice of law in Ohio in 2007. In October 2009, relator, Disciplinary Counsel, filed a 12-count complaint charging respondent with multiple violations of the Rules of Professional Conduct arising from her neglect of client matters; failure to keep her clients informed about the status of their cases and obtain their informed consent; improper notarization of affidavits, including the notarization of documents that were not signed, were not signed by the purported signer, or contained false information; her settlement of a client's legal matter without his consent and her subsequent misappropriation of the settlement proceeds; and her representation of two clients with conflicting interests. Relator amended his complaint in February 2010 to allege three additional counts of misconduct relating to respondent's mishandling of her client trust account and two client bankruptcies.

**{¶ 2}** A panel of the Board of Commissioners on Grievances and Discipline conducted a three-day hearing. At the close of its case, relator moved to dismiss counts 4 and 5 of his complaint, and the panel granted the motion.

**{¶ 3}** Having considered the testimony of respondent and 11 other witnesses, more than 120 exhibits, and stipulations of fact and misconduct regarding two counts of the amended complaint, the panel issued findings of fact and conclusions of law and recommended that respondent be indefinitely suspended from the practice of law, with any future reinstatement contingent upon certain conditions.

**{¶ 4}** The board accepted the panel's findings of fact and conclusions of law. But citing respondent's "extraordinary record of misconduct" in her brief legal career, the board recommended that respondent be permanently disbarred from the practice of law in Ohio. We accept these findings of fact and misconduct and conclude that the appropriate sanction for respondent's misconduct is permanent disbarment.

### Misconduct

*Counts 3, 6, 7, 8, and 9*

**{¶ 5}** Counts 3, 6, 7, 8, and 9 relate to respondent's conduct in notarizing and filing poverty affidavits on behalf of her clients. Each of the affidavits falsely states that it was sworn to and subscribed in respondent's presence. One client completed portions of a poverty affidavit but did not sign it. Someone later completed the affidavit with false information and signed the client's name; respondent, however, admitted that she notarized the document, falsely indicating that the client had sworn to and subscribed the affidavit in her presence.

**{¶ 6}** Two of the affidavits were signed by persons other than the named affiants without indicating that they were signed with permission. Respondent also placed her notary stamp and seal on a fourth affidavit purporting to be that of the named affiant, although it did not bear any signature, and signed a fifth

2

client's name to at least one affidavit and then notarized her own signing of the client's name.

**{¶ 7}** With respect to these five counts, the panel found that respondent had committed four violations of Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), three violations of Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and five violations of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

*Count 1*

**{¶ 8}** The evidence adduced at the panel hearing demonstrates that in August 2008, a client paid respondent $750 and retained her to appeal the Cuyahoga County Employment and Family Services Agency's decision revoking her childcare license. Although respondent was aware that time was of the essence, she waited nearly one month to file the appeal, which was dismissed in December 2008 for failure to comply with the statutory requirements for perfecting the appeal. Respondent did not notify the client of the dismissal and in March 2009 filed a Civ.R. 60(B) motion for relief from judgment without the client's knowledge or consent. In May 2009, after the client learned of the status of the case from relator, the client met with respondent to discuss the dismissal of her appeal and subsequent denial of the motion for relief from judgment. Although respondent appealed the denial of the motion, the client terminated her representation in September 2009 because respondent failed to keep her apprised of the status of the appeal.[1]

---

1. Subsequently, the Eighth District Court of Appeals reversed the dismissal of the Civ.R. 60(B) motion and remanded the cause to the trial court for further proceedings. *In re Jones-Smith*, 8th Dist. No. 93276, 2009-Ohio-6470.

**{¶ 9}** The panel and board also found that during the course of her representation, respondent filed two poverty affidavits on the client's behalf. The first affidavit contained false information, was not signed, falsely stated that it had been sworn to and subscribed in respondent's presence, and was filed without the client's knowledge or consent. The second affidavit was blank when the client signed it, but someone other than the client filled in the information.

**{¶ 10}** The panel and board concluded that these facts clearly and convincingly demonstrate that respondent had violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(1) (requiring a lawyer to inform the client of any decision or circumstance with respect to which the client's informed consent is required), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), and 8.4(c), (d), and (h).

*Count 2*

**{¶ 11}** In September 2008, another client paid respondent $450 in attorney fees and $375 for service by publication to initiate divorce proceedings on his behalf. At that time, the client signed a poverty affidavit. Respondent did not deposit the money that the client had given her for court costs into her client trust account. After more than three months, respondent filed a divorce complaint on the client's behalf but did not request service by publication as he had requested. Instead, respondent included with the complaint a poverty affidavit that contained false financial information for the client, a forged client signature, and a false notary jurat stating that the client had sworn to and subscribed the affidavit in respondent's presence.

**{¶ 12}** Despite making several attempts to inquire about the status of his case, the client was unable to reach the respondent. When he finally reached her and went to her office, respondent gave him documents that falsely stated that the divorce had been filed with instructions for service by publication. Because the

documents did not contain a file stamp or proof of publication, the client sought to verify the filing with the court, where he discovered that someone had forged his signature on a poverty affidavit. After the client confronted respondent, she dismissed the divorce proceeding and refunded his money.

{¶ 13} Based upon these findings, the panel and board found that respondent had violated Prof.Cond.R. 1.4(a)(3), 1.15(c) (requiring a lawyer to deposit into a client trust account legal fees and expenses that have been paid in advance), and 8.4(c), (d), and (h). Although relator's complaint alleged that respondent's conduct also violated Prof.Cond.R. 1.4(a)(1), the board made no findings with respect to that allegation. Because relator has not proven the allegation by clear and convincing evidence, we hereby dismiss it.

*Count 10*

{¶ 14} The charges in count 10 arise from respondent's settling of a client's civil matter without the client's knowledge or consent and then misappropriating proceeds of that settlement.

{¶ 15} Prior to the panel hearing, respondent stipulated to the allegations contained in count 10 of relator's complaint, with three modifications to which relator consented.[2] Respondent acknowledged that she did not notify the client of the settlement offer, did not receive his authorization to settle the case for $8,000, and did not advise him that his case had been dismissed with prejudice in June 2008. Although she denied that she had forged the client's signature on the release of claims or the settlement check, she stipulated that she and her niece signed the release as witnesses to the forged client signature, that someone forged

---

2. The modifications included (1) respondent's denial that she specifically told the client that "these things take time," as alleged in the amended complaint, (2) respondent's denial that she signed the back of the settlement check as alleged in the amended complaint, and (3) the deletion of a sentence listing transactions made from respondent's operating account after she had deposited the settlement check.

the client's signature on the back of the check, that she deposited the settlement check into her operating account, and that she dissipated the settlement proceeds.

{¶ 16} When the client and his wife wrote to the respondent in November 2008 inquiring about the status of the case, she spoke with him and left him with the impression that his case was still pending. In September 2009, the client learned that his case had been settled more than a year earlier. When he confronted respondent with this knowledge, she claimed that she was unaware of any settlement but that she would investigate the matter. In a September 25, 2009 letter to the client, she stated that "[i]t appears that a check for $8,000.00 was sent in settlement from [the defendant]" and offered to pay the client 66 percent of the settlement proceeds in installments. As of the date of the hearing, respondent had not paid the client any portion of the settlement.

{¶ 17} Based upon respondent's stipulations and her testimony, the panel and board found by clear and convincing evidence that respondent had violated Prof.Cond.R. 1.2(a) (requiring a lawyer to abide by the client's decisions concerning the objectives of representation and to consult with the client as to the means by which those objectives are to be pursued), 1.4(a)(1) and (3), 1.15(a) (requiring a lawyer to hold property of clients separate from the lawyer's own property), 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive), and 8.4(c), (d), and (h).

*Count 11*

{¶ 18} Count 11 arises from respondent's criminal defense of a husband and wife facing federal drug charges. Respondent represented the husband in the appeal of his conviction on charges of possession of crack cocaine with the intent to distribute. She also represented his wife as she was investigated and indicted on charges including conspiracy to distribute cocaine with her husband — charges for which the husband was designated as an unindicted coconspirator.

**{¶ 19}** The assistant United States attorney who prosecuted the wife testified that she had offered to seek a reduction of the husband's mandatory life sentence if he would testify against his wife — an offer that remained open throughout respondent's representation — and had expressed concern regarding respondent's dual representation. Respondent rejected the offer and maintained that despite their differing interests, the couple had consented to the joint representation. In the wife's case, however, the court issued an order disqualifying respondent and later rejected respondent's challenge to that determination, stating that respondent "cannot adequately represent and defend [the wife] against those allegations while also representing [the husband]."

**{¶ 20}** Based upon these facts, the panel and board determined that respondent could not have ethically advised both the husband and wife. Therefore, they concluded that respondent had violated Prof.Cond.R. 1.7 (prohibiting a lawyer from accepting or continuing the representation of a client if such representation would create a conflict of interest except in certain limited circumstances) and 8.4(d) and (h).

*Count 13*

**{¶ 21}** The panel and board found that from August 8 through December 11, 2007, respondent maintained a client trust account at Charter One Bank. She commingled personal funds with client funds by depositing earned fees and personal funds into the client trust account, and she used it as a personal account. She also failed to maintain proper records for the client trust account. Moreover, from December 12, 2007, to February 17, 2009, she did not maintain a client trust account at all, although she received funds that should have been deposited into such an account.

**{¶ 22}** Respondent admitted that she did not properly handle her client trust account. She claimed, however, that she was a new lawyer who had never

been instructed how to handle a client trust account or advised of the account's importance.

{¶ 23} Based upon the foregoing, the panel and board found by clear and convincing evidence that respondent had violated Prof.Cond.R. 1.15(a), (b) (permitting a lawyer to deposit his or her own funds in a client trust account only for the purpose of paying or obtaining a waiver of bank-service charges), and (c).

*Counts 12, 14, and 15*

{¶ 24} Counts 12, 14, and 15 relate to respondent's handling of three separate bankruptcy proceedings.

{¶ 25} In April 2008, a husband and wife retained respondent to file a petition for bankruptcy. Respondent never filed the petition and failed to notify them when the bankruptcy court suspended her privileges to practice before that court in August 2008. When the couple had difficulty reaching respondent, they filed complaints with the Cleveland Bar Association, Better Business Bureau, and small claims court. Respondent refunded their legal fees in December 2008.

{¶ 26} In the remaining counts, respondent filed the clients' bankruptcy proceedings, but they were dismissed when she failed to file all the required documents, failed to comply with notices instructing her to correct her filings, and failed to appear at the resulting show-cause hearings. Despite respondent's failures, she falsely advised one client that *his* failure to furnish certain documents caused the dismissal of his bankruptcy proceeding. And although respondent refiled the other client's bankruptcy, that case was also dismissed when she failed to file an electronic filing declaration.

{¶ 27} Additionally, the evidence demonstrates that these clients had difficulty reaching respondent to discuss their cases. And she has not refunded any portion of the $850 paid by the couple in count 14 or the $749 paid on behalf of the client in count 15.

**{¶ 28}** The panel and board found that by engaging in this conduct, respondent had committed one violation of Prof.Cond.R. 1.1 (a lawyer shall provide competent representation to a client), three violations of Prof.Cond.R. 1.3, three violations of Prof.Cond.R. 1.4(a)(3), two violations of Prof.Cond.R. 8.4(c), and two violations of Prof.Cond.R. 8.4(d).

### Sanction

**{¶ 29}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 30}** Although the panel and board observed that respondent has not been the subject of any prior disciplinary proceedings, see BCGD Proc.Reg. 10(B)(2)(a), they expressed their belief that this factor should not be considered mitigating in light of respondent's brief tenure as an attorney. They noted that respondent had been practicing law for less than two years when relator began his investigation into multiple instances of her alleged misconduct.

**{¶ 31}** Similarly, the panel and board rejected respondent's claims that she had cooperated in the disciplinary process. Indeed, the evidence demonstrates that respondent never filed an answer to the original complaint, although she did file a motion seeking dismissal of some of the counts; failed to claim or respond to her mail, including correspondence and discovery requests from relator regarding his investigation; did not provide relator or the panel with a list of her witnesses until the first day of the panel hearing; and although properly notified,

failed to appear for her second deposition. Thus, despite some participation in the disciplinary process, respondent did not demonstrate a cooperative attitude toward the proceedings. See BCGD Proc.Reg. 10(B)(2)(d).

{¶ 32} Likewise, respondent's claimed depression does not qualify as a mitigating factor. This is because other than her own testimony, there is no evidence that her depression has been diagnosed by a qualified medical professional, that it contributed to cause the misconduct, that she has completed a sustained period of successful treatment, or that she will be able to return to the competent, ethical, and professional practice of law. See BCGD Proc.Reg. 10(B)(2)(g)(i) through (iv). To the contrary, her contract with the Ohio Lawyers Assistance Program ("OLAP") was terminated for noncompliance.

{¶ 33} In contrast, the panel and board found that most of the aggravating factors set forth in BCGD Proc.Reg. 10(B)(1) are present. Respondent has exhibited a selfish and dishonest motive by submitting false poverty affidavits and settling a client's case without his knowledge or consent, then using the settlement proceeds for her own benefit. BCGD Proc.Reg. 10(B)(1)(b). She has engaged in a pattern of misconduct involving multiple offenses. See BCGD Proc.Reg. 10(B)(1)(c) and (d).

{¶ 34} Although respondent offered some cooperation in the early stages of relator's investigation, by the time relator filed his complaint, that cooperation gave way to avoidance and denial. See BCGD Proc.Reg. 10(B)(1)(e). While she submitted an affidavit averring that she had signed poverty affidavits on behalf of two clients as their attorneys in fact, she later testified that she thought the clients had signed the documents and acknowledged that the information contained in her affidavit was "incorrect." See BCGD Proc.Reg. 10(B)(1)(f). She claimed that she was unable to obtain her voicemail messages or contact her clients for several weeks in November 2008 when she experienced an extended power outage at her office, but admitted that she had never attempted to access them remotely. See id.

**{¶ 35}** Respondent has also failed to acknowledge the wrongfulness of her conduct and has caused harm to vulnerable clients. See BCGD Proc.Reg. 10(B)(1)(g) and (h). She contends that she did nothing wrong when she filed false and fraudulent poverty affidavits because the courts did not rely upon them, and appears to believe that refunding her clients' money somehow rectifies her misconduct. She does not appreciate the conflict of interest created by her dual representation of clients in related criminal proceedings and continues to blame her clients for the dismissal of their bankruptcy proceedings, despite the fact that the dismissal entries clearly identify her filing errors as the reason for the dismissals. And while respondent acknowledged that she mishandled her client trust account, she seeks to deflect blame for her conduct by claiming that she had never been taught about the proper handling of the account.

**{¶ 36}** Before the panel hearing, respondent stipulated that she did not notify a client that a settlement offer had been made in his case and did not receive the client's authorization to accept the offer, but that she signed the release as a witness to the signature purporting to be that of her client, sent the executed release to opposing counsel, and deposited the settlement check into her operating account. Yet at the hearing, she attempted to disavow her actions by testifying that she had "learned that [the client's case] was settled" and that she was "just taking full responsibility" for the events that had occurred with respect to that client. Not only has respondent failed to provide any restitution to the client since she settled his case in June 2008, see BCGD Proc.Reg. 10(B)(1)(i), she continues to claim that she is entitled to one-third of the proceeds of the unauthorized settlement.

**{¶ 37}** At the hearing, relator argued that an indefinite suspension is the appropriate sanction for respondent's misconduct, but stated that he would not object to permanent disbarment. Respondent, however, argued in favor of a suspension of no more than two years, with 18 months stayed on conditions.

**{¶ 38}** Citing its belief that respondent suffers from some type of mental disability and that she could be rehabilitated, the panel recommends that respondent be indefinitely suspended and that we place certain conditions on any future reinstatement. While the board adopted the panel's findings of fact and conclusions of law, based upon respondent's "extraordinary record of misconduct," the board recommends that we permanently disbar her from the practice of law in Ohio. Respondent has not challenged the board's findings of misconduct or the recommended sanction of permanent disbarment.

**{¶ 39}** We have consistently recognized that the presumptive disciplinary sanction for misappropriation of client funds is disbarment. See, e.g., *Lorain Cty. Bar Assn. v. Fernandez*, 99 Ohio St.3d 426, 2003-Ohio-4078, 793 N.E.2d 434, ¶ 9; *Disciplinary Counsel v. France*, 97 Ohio St.3d 240, 2002-Ohio-5945, 778 N.E.2d 573, ¶ 11; *Disciplinary Counsel v. Wherry* (2000), 87 Ohio St.3d 584, 587, 722 N.E.2d 515. Although this presumption may be overcome by sufficient evidence of mitigating or extenuating circumstances, no such circumstances are present in this case. See, e.g., *Dayton Bar Assn. v. Gerren*, 103 Ohio St.3d 21, 2004-Ohio-4110, 812 N.E.2d 1280, ¶ 14, citing *Disciplinary Counsel v. Smith*, 101 Ohio St.3d 27, 2003-Ohio-6623, 800 N.E.2d 1129. On the contrary, misappropriation of client funds is just one of 48 violations of the Ohio Rules of Professional Conduct. Respondent's inability or unwillingness to recognize the seriousness of her actions, coupled with the nature and sheer volume of her misconduct, demonstrates a lack of integrity and candor that is essential to the competent, ethical, and professional practice of law.

**{¶ 40}** Having considered respondent's conduct, the aggravating factors, the absence of mitigating factors, and our precedent, we adopt the board's findings of fact and conclusions of law and conclude that the appropriate sanction for respondent's misconduct is permanent disbarment.

{¶ 41} Accordingly, Shondra Collette Longino is hereby permanently disbarred from the practice of law in the state of Ohio. Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, Lori J. Brown, Chief Assistant Disciplinary Counsel, and Karen H. Osmond, for relator.

Shondra Collette Longino, pro se.

_____