**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Columbus Bar Assn. v. Winkfield,* **Slip Opinion No. 2019-Ohio-4532.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-4532

COLUMBUS BAR ASSOCIATION *v.* WINKFIELD.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Winkfield,* Slip Opinion No. 2019-Ohio-4532.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Fourth attorney-discipline case before this court—Indefinite suspension with conditions for reinstatement.*

(No. 2019-0221—Submitted April 23, 2019—Decided November 6, 2019.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2018-016.

_____

**Per Curiam.**

{¶ 1} Respondent, Lawrence Edward Winkfield, of Columbus, Ohio, Attorney Registration No. 0034254, was admitted to the practice of law in Ohio in 1975. The Board of Professional Conduct recommends that we suspend him from the practice of law for two years, with 18 months of the suspension stayed on

conditions, for committing professional misconduct in three client matters and for failing to properly manage his client trust account. We accept the board's findings of misconduct, but considering Winkfield's lengthy disciplinary record, we conclude that an indefinite suspension is the appropriate sanction in this case.

### Winkfield's Prior Discipline and Procedural Background

{¶ 2} This is Winkfield's fourth attorney-discipline case before this court. In 1996, we found that he had failed to promptly return a client's money and suspended him for one year, with the entire suspension stayed on the condition that he pay restitution. *Columbus Bar Assn. v. Winkfield*, 75 Ohio St.3d 527, 664 N.E.2d 902 (1996). In 2001, we found that he had committed multiple ethical violations in a single client matter and failed to cooperate in a separate disciplinary investigation. We suspended him for two years, with the second year of the suspension stayed on conditions. *Columbus Bar Assn. v. Winkfield*, 91 Ohio St.3d 364, 745 N.E.2d 411 (2001). In 2006, we indefinitely suspended him for committing professional misconduct in eight client matters and continuing to practice law after his 2001 suspension. *Columbus Bar Assn. v. Winkfield*, 107 Ohio St.3d 360, 2006-Ohio-6, 839 N.E.2d 924.

{¶ 3} In June 2014, we reinstated Winkfield's law license on conditions, including that he serve a three-year period of monitored probation and comply with all treatment recommendations from his mental-health practitioners. *Columbus Bar Assn. v. Winkfield*, 139 Ohio St.3d 1248, 2014-Ohio-2491, 13 N.E.3d 1173; *Columbus Bar Assn. v. Winkfield*, 139 Ohio St.3d 1249, 2014-Ohio-2490, 13 N.E.3d 1174. In April 2016, we held Winkfield in contempt for violating those two conditions. We also ordered that he serve an additional two years of monitored probation and engage with the Ohio Lawyers Assistance Program ("OLAP"). *Columbus Bar Assn. v. Winkfield*, 145 Ohio St.3d 1437, 2016-Ohio-1555, 48 N.E.3d 578.

**{¶ 4}** In April 2018, relator, Columbus Bar Association, filed the underlying complaint charging Winkfield with professional misconduct in four separate client matters and with misusing his client trust account. Winkfield denied that his actions amounted to any violations of the Rules of Professional Conduct, and the matter proceeded to a hearing before a three-member panel of the board. Based on the hearing evidence, the board recommends that we dismiss a majority of the charges for lack of sufficient evidence, find that Winkfield violated seven professional-conduct rules, and suspend him for two years, with eighteen months of the suspension stayed on conditions. The board also recommends that upon reinstatement, Winkfield serve another two-year period of monitored probation to specifically address the deficiencies in his practice that led to this disciplinary action. Although the parties jointly stipulated to an extension of time to submit objections to the board's report and recommendation, neither party filed any objections.

**Misconduct**

***Count One—the Bailey matter***

**{¶ 5}** In 2015, Lawrence Bailey suffered an injury at a motel and retained Winkfield to assist him with recovering money for his medical bills. In February 2016, Winkfield sent a letter to a medical-billing entity seeking information about the services that had been rendered on Bailey's behalf. In August 2016, Winkfield advised Bailey that he would send a demand letter to the motel's insurer but that if the matter could not be settled, then Bailey would need to pay Winkfield for court costs to file a lawsuit.

**{¶ 6}** Bailey thereafter attempted to contact Winkfield by telephone, through text message, and through Winkfield's staff, but Winkfield failed to respond to Bailey's inquiries. Winkfield also failed to respond to letters from the medical-billing entity seeking information about Bailey's claim. And Winkfield failed to contact the individual identified by the motel as the tortfeasor—although

Winkfield later claimed that he had made some efforts to locate him. In March 2017, Bailey filed a grievance against Winkfield, who had never filed a lawsuit on Bailey's behalf.

{¶ 7} The board determined that Winkfield's "lack of any activity at all on this matter for numerous months demonstrates the lack of diligence and client communication that would otherwise be expected of an attorney." The board therefore found that he violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client) and 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter).

{¶ 8} We agree with the board's findings of misconduct. We also accept the board's recommendation to dismiss the other alleged rule violations in this count.

### Count Two—the Eisenhart matter

{¶ 9} In 2015, Richard Eisenhart retained Winkfield to assist him in recovering money from contractors who had failed to complete work on Eisenhart's home. Winkfield agreed to represent Eisenhart on a one-third contingency-fee basis but failed to have Eisenhart sign a written fee agreement.

{¶ 10} In 2016, Winkfield sent Eisenhart a letter stating that his efforts had "far exceeded the flat fee originally quoted" and requested Eisenhart to immediately pay "[t]he $450 flat fee." Eisenhart thereafter paid Winkfield $410 in cash. Although Winkfield attempted to recover some money for Eisenhart, Winkfield never filed a complaint, and Eisenhart submitted a grievance against him. In response to relator's letter of inquiry, Winkfield stated that Eisenhart had paid him $410 "on a modified contingency basis" and that during the representation, Winkfield altered the original contingency-fee agreement to a "modified" contingency-fee agreement. But at his disciplinary hearing, Winkfield testified that he had agreed to represent Eisenhart "on an hourly basis" and that his rate later changed to a "modified contingency fee."

{¶ 11} The board found that Winkfield "wavered between suggesting there was a $450 flat fee agreement * * * and a one-third contingency fee agreement" and that if Winkfield was "unable to clearly state what the fee arrangement was, his client certainly cannot be expected to know." The board further found that Winkfield ultimately "treated the fee arrangement as a contingency fee agreement, even if modified," despite the fact that Eisenhart never signed a written fee agreement. Accordingly, the board concluded that Winkfield violated Prof.Cond.R. 1.5(b) (requiring an attorney to communicate to the client the nature and scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible within a reasonable time after commencing representation) and 1.5(c)(1) (requiring an attorney to have set forth a contingent-fee agreement in a writing signed by the client).

{¶ 12} We agree with the board's findings of misconduct. We also accept the board's recommendation to dismiss the other alleged rule violation in this count.

### Count Three—the Taylor matter

{¶ 13} In February 2016, Winkfield agreed to represent Michael Taylor in Taylor's then-pending child-custody case. In several different installments, Taylor paid Winkfield $395 of the $500 "flat fee" that Winkfield had quoted Taylor for the representation.

{¶ 14} Taylor later filed a grievance against Winkfield. During relator's investigation, Winkfield stated that he had requested "an additional $1,000 for attorney fees" from Taylor and that he "was compelled to quote an additional retainer" because of the extensive amount of time he had spent on Taylor's case. At his disciplinary hearing, Winkfield testified that he had a written fee agreement with Taylor, that his initial request for $500 was a "minimum retainer," and that he had charged Taylor "from the very beginning at $200 an hour." The panel gave Winkfield additional time after his disciplinary hearing to supplement the record

with a copy of the alleged written fee agreement, but Winkfield was unable to locate the document.

**{¶ 15}** The board concluded that Winkfield's testimony "was confused as to the nature of the fee arrangement with Taylor" and that similar to the Eisenhart matter, if Winkfield was "not able to discern what the arrangement was, the client cannot be expected to do so." The board therefore found that Winkfield committed another violation of Prof.Cond.R. 1.5(b).

**{¶ 16}** We agree with the board's finding of misconduct. We also agree to dismiss the other alleged rule violation in this count.

### Count Four—client-trust-account violations

**{¶ 17}** At his disciplinary hearing, Winkfield acknowledged that he did not maintain separate client ledgers for each client with funds in his client trust account and that he did not perform the proper monthly reconciliations of the funds held for each client in the account. As we have previously explained,

> Prof.Cond.R. 1.15 requires that an attorney hold client funds in a client trust account and maintain records of that account, including (1) individual client ledgers—that is, a record for each client showing the date, amount, and source of funds received on behalf of that client; the date, amount, and purpose of funds disbursed on behalf of the client * * * and (3) monthly reconciliations of the funds held in the trust account.

*Disciplinary Counsel v. Daniell*, 140 Ohio St.3d 67, 2014-Ohio-3161, 14 N.E.3d 1040, ¶ 4.

**{¶ 18}** The board therefore found that Winkfield violated Prof.Cond.R. 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held) and 1.15(a)(5) (requiring a lawyer to perform and retain a monthly

6

reconciliation of the funds held in the lawyer's client trust account). We agree with the board's findings of misconduct and also agree with the board's recommendation to dismiss the remaining charges in this count.

### Count Five

{¶ 19} The board concluded that relator failed to prove any of the professional-conduct rule violations alleged in count five of its complaint and therefore recommends that we dismiss the count in its entirety. We accept the board's recommendation and hereby dismiss all charges in count five.

### Sanction

{¶ 20} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 21} As aggravating factors, the board found that Winkfield has a prior disciplinary record, engaged in a pattern of misconduct by repeatedly failing to clearly set forth the basis or rate of his attorney fees, and committed multiple offenses. *See* Gov.Bar R. 13(V)(B)(1), (3), and (4). In addition, the board concluded that he refused to accept responsibility for some of his misconduct and—as explained below—attempted to shift blame onto the attorneys who had been assigned to monitor his probation. *See* Gov.Bar R. 13(V)(B)(7).

{¶ 22} The board did not find the existence of any mitigating factors. Although Winkfield argued that relator and its monitors had failed in their duties to either properly supervise his probation or notify him of problems with his client trust account, the board rejected any argument suggesting that a monitor's negligence "is a mitigating factor or serves as any defense to the rule violations." Volunteer monitors, according to the board, "cannot and should not be expected to discover and identify" every potential deficiency in an attorney's practice, and each lawyer is responsible for ensuring that his or her practice complies with the Rules

of Professional Conduct, regardless of whether the attorney is subject to monitored probation. We agree with the board that Winkfield failed to establish that the actions of relator or the alleged inaction of Winkfield's former monitors somehow absolve him of responsibility or amount to mitigating evidence in this case.

{¶ 23} To support its recommended sanction, the board cited a number of cases imposing term suspensions on attorneys who—like Winkfield—committed misconduct upon returning to the practice of law after an indefinite suspension. The board noted that although we frequently indefinitely suspend or disbar such attorneys, we also impose lesser sanctions when appropriate. And the evidence here, the board concluded, was similar to those cases imposing a term suspension, with a majority of the suspension stayed on conditions.

{¶ 24} A term suspension, however, is not appropriate in this case. Winkfield has a lengthy disciplinary record that includes serious ethical violations, including continuing to practice law in violation of a prior suspension order. In this case, he committed professional misconduct in three separate client matters and violated the rule regulating client trust accounts—all while he was serving probation as a sanction for prior misconduct—and he admitted at his disciplinary hearing that his trust-account violations were ongoing. In addition, unlike the attorneys in most of the cases cited in the board's report, Winkfield has not presented any qualifying mitigating evidence to weigh in favor of a lesser sanction. Instead, he attempted to shift some of the responsibility for his misconduct to relator and to his former practice monitor.

{¶ 25} These circumstances require an indefinite suspension from the practice of law. In *Mahoning Cty. Bar Assn. v. DiMartino*, 145 Ohio St.3d 391, 2016-Ohio-536, 49 N.E.3d 1280, we faced an attorney appearing before us for the fourth time who had engaged in some of the same varied misconduct as Winkfield, including neglecting a client, failing to communicate the nature and scope of the representation and the basis or rate of the attorney's fee, failing to set forth a

contingent-fee agreement in writing, and failing to properly account for funds in his client trust account. And like here, several aggravating factors were present but no mitigating factors. As a sanction, we indefinitely suspended DiMartino, ordered him to make restitution to two clients, and imposed conditions on any reinstatement.

**{¶ 26}** "[W]e have consistently recognized that the primary purpose of disciplinary sanctions is not to punish the offender, but to protect the public." *Disciplinary Counsel v. Edwards,* 134 Ohio St.3d 271, 2012-Ohio-5643, 981 N.E.2d 857, ¶ 19, citing *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53. Based on the record here—including Winkfield's continued inability to comply with the Rules of Professional Conduct, despite prior discipline—we conclude that an indefinite suspension, rather than a partially stayed, two-year suspension, will best protect the public.

### Conclusion

**{¶ 27}** Lawrence Edward Winkfield is hereby indefinitely suspended from the practice of law in Ohio, and he is ordered to make restitution to Richard Eisenhart in the amount of $278, the remaining amount of Eisenhart's $410 payment to Winkfield that he has yet to refund, within 60 days of this court's disciplinary order. In addition to the requirements set forth in Gov.Bar R. V(25), any future reinstatement is conditioned on Winkfield's submission of proof that he obtained a passing score on the Multistate Professional Responsibility Examination. Upon reinstatement, Winkfield shall serve a two-year period of monitored probation pursuant to Gov.Bar R. V(21) with emphasis on law-office management in order to address his deficiencies with fee agreements, client ledgers, reconciling his client trust account, and managing his client-trust-account records. Costs are taxed to Winkfield.

Judgment accordingly.

FRENCH, DEWINE, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., dissents, with an opinion.

FISCHER, J., dissents, with an opinion joined by O'CONNOR, C.J.

_____

**KENNEDY, J., dissenting.**

{¶ 28} Because the primary purpose of the disciplinary process is "to safeguard the courts and to protect the public from the misconduct of those who are licensed to practice law," *Ohio State Bar Assn. v. Weaver*, 41 Ohio St.2d 97, 100, 322 N.E.2d 665 (1975), I dissent. Despite our past extensive efforts to aid and rehabilitate respondent, Lawrence Edward Winkfield, and restore him to the competent and ethical practice of law, we return to where our paths first crossed— violations of Ohio's Rules of Professional Conduct. Winkfield continues to harm the unknowing public. We have a solemn obligation to protect the public, and I would therefore permanently disbar Winkfield from the practice of law.

{¶ 29} Winkfield first came to the attention of this court in 1995. *Columbus Bar Assn. v. Winkfield*, 75 Ohio St.3d 527, 664 N.E.2d 902 (1996) ("*Winkfield I*"). At that time, he was charged with a violation of DR 9-102(B)(4) (requiring a lawyer to promptly pay funds that a client is entitled to receive). *Winkfield I* at 527. The matter came to light after Winkfield's client applied to the Clients' Security Fund for reimbursement of an advancement of fees, totaling $3,906. *Id.* A three-member panel of the Board of Professional Conduct ("board") found that Winkfield had violated DR 9-102(B)(4), and despite a lack of any evidence in mitigation, recommended a one-year suspension from the practice of law, all stayed on the condition that Winkfield reimburse the client the amount owed by July 1, 1995. *Id.* at 528. The board adopted the panel's findings of fact and conclusions of law but rejected the proposed sanction on the basis that Winkfield's " 'willful failure to acknowledge the obligation owed the firm's client and the absence of remorse for his own misconduct' " merited an actual suspension from the practice of law. *Id.*, quoting the board's report.

{¶ 30} Declining to consider Winkfield's failure to "admit or apologize for his wrongdoing" a sufficient basis to impose an actual suspension for his misconduct, this court imposed a fully stayed one-year suspension conditioned on proof of full restitution. *Winkfield I* at 529. Two justices dissented, writing that

> [t]he sanction recommended by the board of a one-year suspension from the practice of law and full restitution appears appropriate in light of Mr. Winkfield's conduct and his unwillingness to acknowledge his wrongdoing. The fact that a lawyer fails to accept responsibility for unethical conduct suggests to me that further violation of the Code of Professional Responsibility is more probable than in a case where the breach is acknowledged.

*Id*. at 530 (Cook, J., dissenting).

{¶ 31} And in 1997, Winkfield returned to the attention of this court. *Columbus Bar Assn. v. Winkfield*, 91 Ohio St.3d 364, 745 N.E.2d 411 (2001) ("*Winkfield II*"). In his second case, Winkfield again failed to promptly pay a client funds that the client was entitled to receive. In that case, in February 1997, the family of Frederick E. Lowery retained Winkfield and paid him a $7,000 retainer. In July 1997, the family informed Winkfield that he was discharged and demanded that he return the unused portion of the retainer. In October 1998, prior to receiving the disciplinary complaint, Winkfield had turned the balance that was due to the Lowery family over to "former counsel." *Winkfield II* at 364. In May 1999, former counsel transmitted the money to the Lowery family.

{¶ 32} During the course of the Lowery matter, the Office of Disciplinary Counsel gave Winkfield notice of another complaint that had been filed against him. Despite having received disciplinary counsel's initial notice of the complaint and two subsequent requests to respond, Winkfield failed to reply. Thereafter, the

relator in the case, the Columbus Bar Association ("CBA"), amended the complaint charging, among other violations, that Winkfield's conduct violated

> [DR] 9-102(A)(2) (failing to deposit client funds in an account in which no funds of the lawyer are deposited except those that potentially belong to the lawyer), 9-102(B)(3) (failing to render appropriate accounts to the client), and 9-102(B)(4) (failing to promptly deliver client funds to the client upon request).

*Winkfield II* at 365. The amended complaint also included a charge for failing to cooperate in a disciplinary investigation in violation of Gov.Bar R. V(4)(G).

**{¶ 33}** After adopting the panel's findings, conclusions, and recommendations, the board recommended that Winkfield be sanctioned with an indefinite suspension from the practice of law with restitution and interest paid to the Lowery family. This court rejected the board's recommendation and suspended Winkfield from the practice of law for two years, with the final year of the suspension stayed on conditions.

**{¶ 34}** Two dissenting justices would have adopted the board's recommendation of an indefinite suspension.

> To justify its departure from the board's recommendation, the majority notes that "[s]even months of the delay in returning the funds to the Lowerys can be attributed to the former attorney for [Winkfield]." I do not disagree with this finding, but it does not account for [Winkfield's] sole control of the funds for nearly *fourteen months* after receiving the Lowerys' termination notice and demand for accounting. Nor does it account for the panel's other troubling findings: that "the testimony of [Winkfield] was glib and

not sincerely an expression of regret about his obvious mistreatment of the Lowery family," and that there is "[no] basis to believe that [Winkfield] would change his way of mistreating clients in the future."

(First and fifth brackets and emphasis sic.) *Winkfield II*, 91 Ohio St.3d at 365, 745 N.E.2d 411 (Cook, J., dissenting).

{¶ 35} In 2005, Winkfield again came to the attention of this court for violating the suspension order that we issued in *Winkfield II* and for committing additional violations of the professional-conduct rules. *Columbus Bar Assn. v. Winkfield*, 107 Ohio St.3d 360, 2006-Ohio-6, 839 N.E.2d 924 ("*Winkfield III*"). In *Winkfield III*, Winkfield stipulated to the facts and misconduct as charged for nine counts involving multiple clients and multiple rule violations. Among other charges of misconduct, Counts I, VI, and VIII each contained a violation of DR 9-102(B)(4) (requiring a lawyer to promptly deliver funds a client is entitled to receive). *Id*. at ¶ 7, 25, 32. Counts I, II, III, IV, V, VIII, and X each contained a violation of an order suspending a lawyer from the practice of law. *Id*. at ¶ 7, 11, 14, 17, 20, 32, 34. Counts I, II, III, IV, and V each contained a violation of DR 1-102(A)(4) (prohibiting conduct involving fraud, deceit, dishonesty, or misrepresentation). *Id*. at ¶ 7, 11, 14, 17, 20. Also, Counts I, III, VI, VII, and VIII each contained violations of DR 7-101(A)(3) (prohibiting a lawyer from causing a client damage or prejudice). *Id*. at ¶ 7, 14, 25, 29, 32. Counts VI and VIII also each contained a violation of Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate in disciplinary proceedings) stemming from Winkfield's failure to respond to three letters of inquiry that had been sent by the CBA. *Id*. at ¶ 24-25, 32.

{¶ 36} Because of the seriousness of Winkfield's "mental disease and the professional and personal hardships it ha[d] caused," *id*. at ¶ 46, the CBA and the board did not advocate for disbarment but recommended an indefinite suspension

from the practice of law. We noted that the panel and the board "found most compelling the testimony of [Winkfield's] foster mother" wherein she "implored the panel not to 'discard' " Winkfield, describing him as "a capable person who had stopped short of his potential" and asked the panel "that he be given one more chance to recover and possibly return someday to practicing law." *Id*. at ¶ 53. We accepted the recommendation of the board and indefinitely suspended Winkfield from the practice of law with conditions, *id*. at ¶ 57-63, including the requirement that he provide us with a "detailed oversight plan for his postsuspension practice of law that include[d] a structured environment and monitoring," *id*. at 64.

{¶ 37} In June 2014, we reinstated Winkfield to the practice of law on the conditions that he serve a three-year term of monitored probation, fulfill all mental-health recommendations by Dr. Jerry M. Zober, and refrain from engaging in illegal conduct. *Columbus Bar Assn. v. Winkfield*, 139 Ohio St.3d 1248, 2014-Ohio-2491, 13 N.E.3d 1173 ("reinstatement order").

{¶ 38} On April 15, 2016, we considered the board's petition to revoke Winkfield's probation for violating the reinstatement order. *Columbus Bar Assn. v. Winkfield*, 145 Ohio St.3d 1437, 2016-Ohio-1555, 48 N.E.3d 578 ("*Winkfield IV*"). We found Winkfield in contempt for failing to fulfill Dr. Zober's mental-health recommendations and for failing to refrain from engaging in illegal conduct. Nevertheless, we denied the petition for revocation of probation in part and modified the conditions of the reinstatement order to require an evaluation by the Ohio Lawyers Assistance Program ("OLAP") and that Winkfield "promptly and fully" comply with the recommendations of OLAP. *Id.* We further ordered that the monitoring of Winkfield be assumed by OLAP for the remainder of the three-year term of probation ordered in *Winkfield III*, and that he serve an additional two years of monitored probation. *Id.*

{¶ 39} Just two years after finding Winkfield in contempt in *Winkfield IV*, this complaint involving three clients and multiple violations was filed against

Winkfield. The violations include: lack of diligence, failing to communicate the nature and extent of fees, and failing to maintain a record for and a reconciliation of the funds held in his client trust account on a monthly basis. Winkfield's current misconduct originated during 2015 and 2016, the same time this court was considering the petition to revoke Winkfield's probation. *See Winkfield IV,* 145 Ohio St.3d 1437, 2016-Ohio-1555, 48 N.E.3d 578.

{¶ 40} As aggravating factors, the panel found that Winkfield (1) was previously disciplined, (2) committed multiple violations, (3) perpetrated a "pattern of misconduct relative to the failure to clearly set forth the basis upon which attorney fees would be charged," and (4) "was unwilling to accept personal responsibility for some of these lapses, preferring instead to blame volunteer monitors that were assigned to help monitor [Winkfield] during his probation period." In fact, the only mitigating evidence Winkfield provided to the panel was that the "monitors appointed by [the CBA] were negligent, thereby leading to [his] lapses." Despite the panel being "troubled by this argument as it would adopt an unprecedented standard that would partially insulate attorneys who are assigned monitors," the panel nevertheless recommended that Winkfield be suspended from the practice of law for two years with 18 months of the suspension stayed on conditions, including another two-year term of monitored probation.

{¶ 41} This court has found that attorneys who have an extensive history of misconduct are no longer fit to practice law. *See Columbus Bar Assn. v. Stubbs,* 134 Ohio St.3d 162, 2012-Ohio-5481, 980 N.E.2d 1012 (attorney permanently disbarred following previous sanctions of conditionally stayed six-month suspension and indefinite suspension); *Cleveland Metro. Bar Assn. v. Cicirella*, 133 Ohio St.3d 448, 2012-Ohio-4300, 979 N.E.2d 244 (attorney permanently disbarred following previous sanctions of two-year suspension with one year stayed and indefinite suspension); *Akron Bar Assn. v. Holder,* 112 Ohio St.3d 90, 2006-Ohio-6506, 858 N.E.2d 356 (attorney permanently disbarred following previous sanction

of two-year suspension with 18 months stayed and indefinite suspension); *Toledo Bar Assn. v. Pommeranz,* 102 Ohio St.3d 26, 2004-Ohio-1586, 806 N.E.2d 509 (attorney permanently disbarred following previous sanctions of conditionally stayed one-year suspension and one-year suspension with six months conditionally stayed).

{¶ 42} Instead of looking to those cases for guidance, the majority relies on *Mahoning Cty. Bar Assn. v. DiMartino*, 145 Ohio St.3d 391, 2016-Ohio-536, 49 N.E.3d 1280. In that case, the respondent, Dennis DiMartino, was before this court for his fourth disciplinary case. In 1994, he was sanctioned for failing to respond to a client's inquiries, failing to provide that client with a settlement statement, and failing to promptly forward that client's portion of the settlement proceeds. We imposed a six-month suspension, fully stayed on conditions. Thirteen years later, after holding that DiMartino had neglected a client matter, we imposed a one-year suspension, fully stayed on conditions. In 2010, we sanctioned DiMartino for engaging in dishonest conduct during his stayed suspension. He had falsely represented on a North Carolina marriage-license application that he was not married, despite the fact that his Ohio divorce case was still pending. Accordingly, we reinstated the one-year suspension from the previous case and also imposed a concurrent, six-month-suspension for his dishonest conduct. Then, in 2016, we indefinitely suspended DiMartino for neglecting a client, failing to account for settlement funds, and being dishonest.

{¶ 43} In my view, DiMartino's prior disciplinary record is not comparable to Winkfield's history of misconduct. While both Winkfield and DiMartino each have been subject to four substantive disciplinary actions in their respective careers, Winkfield's misconduct is far more grave. His neglect of client matters and mishandling of client funds is more extensive. He also violated a previously imposed suspension order by continuing to practice law, which resulted in this court's decision to impose an indefinite suspension. *See Winkfield III*, 107 Ohio

St.3d 360, 2006-Ohio-6, 839 N.E.2d 924. And even more troubling is that Winkfield has changed tack, going from blaming his clients to blaming the CBA's monitors for failing in their duties.

{¶ 44} At the beginning of Winkfield's disciplinary journey, former Justice Cook prognosticated that "[t]he fact that a lawyer fails to accept responsibility for unethical conduct suggests * * * that further violation of the Code of Professional Responsibility is more probable than in a case where the breach is acknowledged." *Winkfield I*, 75 Ohio St.3d at 530, 664 N.E.2d 902 (Cook, J., dissenting). That prediction has become the reality, a reality that will persist until Winkfield accepts that he alone is responsible for his misconduct.

{¶ 45} I am sympathetic to the hardships that Winkfield's mental disorder has caused. Nevertheless, of tantamount importance is the " 'protect[ion of] the public against members of the bar who are unworthy of the trust and confidence essential to the relationship of attorney and client * * *.' " *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 10, quoting *In re Pennica*, 36 N.J. 401, 418-419, 177 A.2d 721 (1962). Winkfield has repeatedly caused actual harm to clients, lacks insight into his responsibility for the misconduct, has disregarded our prior orders, and continues to repeatedly engage in misconduct, in spite of the extensive efforts to aid and rehabilitate him and restore him to the competent and ethical practice of law. Consequently, I have no confidence that any sanction that allows Winkfield to practice law will protect the public. Therefore, I dissent and would permanently disbar Winkfield from the practice of law.

_____

**FISCHER, J., dissenting.**

{¶ 46} I believe most people, especially lawyers, are good and thoughtful people. I also believe in giving people second chances whenever possible—i.e., the proverbial "second bite at the apple." But at some point, by someone's fourth

or fifth chance, I am compelled to say, "Enough is enough." Respondent, Lawrence Edward Winkfield, obviously does not understand this phrase. This is, after all, Winkfield's fourth attorney-discipline case before this court. As a justice of the Supreme Court of Ohio, I have a duty to protect the public from unethical attorneys. Today, that duty must prevail over individual mercy.

**{¶ 47}** In light of Winkfield's multitude of prior and disparate violations of the Rules of Professional Conduct and our obligation to protect the public, this court should enter an order permanently disbarring Winkfield from the practice of law in Ohio. Because the majority opinion does not do so, respectfully, I must dissent.

### I. Not So Secret and Frequently Sanctioned

**{¶ 48}** It is no secret that Winkfield has had trouble abiding by the Rules of Professional Conduct. For a detailed recitation of Winkfield's prior and lengthy history before this court and his ethical shortcomings, I will simply refer the reader to paragraphs two and three of the majority's opinion, majority opinion at ¶ 2-3.

**{¶ 49}** To summarize, however, Winkfield has had ethical and probation-condition violations proven by clear and convincing evidence in four cases prior to the one currently before this Court. *See Columbus Bar Assn. v. Winkfield*, 75 Ohio St.3d 527, 664 N.E.2d 902 (1996) (one rule violation); *Columbus Bar Assn. v. Winkfield*, 91 Ohio St.3d 364, 745 N.E.2d 411 (2001) (seven rule violations); *Columbus Bar Assn. v. Winkfield*, 107 Ohio St.3d 360, 2006-Ohio-6, 839 N.E.2d 924 (53 rule violations); *Columbus Bar Assn. v. Winkfield*, 145 Ohio St.3d 1437, 2016-Ohio-1555, 48 N.E.3d 578 (petition for revocation of probation denied in part).

**{¶ 50}** In the present case, while representing three different clients in three separate matters, and while being entrusted with his clients' funds, Winkfield violated *at least* seven more professional-conduct rules. First, Winkfield violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client) and 1.4(a)(3) (requiring a lawyer to keep his client reasonably

18

informed about the status of a matter).  Next, Winkfield violated Prof.Cond.R. 1.5(b) (requiring an attorney to communicate the nature and scope of the representation and the rate or basis and expenses for which the client will be responsible) and 1.5(c)(1) (requiring an attorney to have a contingency-fee agreement in a writing signed by the client).  If that were not enough, the board also found that Winkfield violated Prof.Cond.R. 1.5(b) again in a separate matter.  Finally, Winkfield violated Prof.Cond.R. 1.15(a)(2) and (5), both of which deal with client-trust-account documentation.

{¶ 51} Adding insult to injury, Winkfield committed these seven new violations *while on probation*, which had already been extended for two more years after Winkfield failed to comply with the conditions of that probation.

{¶ 52} Across these many cases, Winkfield has a disciplinary record with 68 rule violations, plus two probation-condition violations, and one finding of contempt.  After all this, the majority opinion still imposes only an indefinite suspension of Winkfield's license.  This is why I must respectfully dissent.

## II.  Regulating the Profession and Protecting the Public

{¶ 53} The Ohio Constitution tasks this court, and this court alone, with the responsibility of regulating and controlling the practice of law in the state of Ohio. Ohio Constitution, Article IV, Section 2(B)(1)(g).  To carry out this important task, this court has adopted certain rules of professional conduct.  *See Shimko v. Lobe*, 103 Ohio St. 3d 59, 2004-Ohio-4202, 813 N.E.2d 669, ¶ 54 (" 'The power to promulgate and enforce rules of conduct is a necessary incident to the power to admit; if that were not true, then the courts would have no control over their own officers, and the practice of the law would cease to be a profession * * *,' " quoting *In re Dombey*, 68 Ohio Law Abs. 36, 45, 1954 WL 8029 (C.P.1954)).

{¶ 54} As this court has previously noted, "[e]very lawyer who is admitted to practice law in Ohio takes an oath of office * * * [and] [a]s part of that oath, the attorney swears or affirms * * * to 'abide by the Ohio Rules of Professional

Conduct.' " *Disciplinary Counsel v. Harris*, 137 Ohio St.3d 1, 2013-Ohio-4026, 996 N.E.2d 921, ¶ 10, quoting Gov.Bar R. I(8)(A). When a lawyer violates these rules, he or she is subject to discipline. Comment 1, Prof.Cond.R. 8.4(a).

{¶ 55} As the entity with the final say on the subject of attorney discipline, *see Cincinnati Bar Assn. v. Powers*, 119 Ohio St.3d 473, 2008-Ohio-4785, 895 N.E.2d 172, ¶ 21, this court considers all relevant factors when imposing sanctions for attorney misconduct, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 56} To support the sanctions imposed in this case, the majority opinion relies exclusively on *Mahoning Cty. Bar Assn. v. DiMartino*, 145 Ohio St.3d 391, 2016-Ohio-536, 49 N.E.3d 1280.

{¶ 57} Based on the facts in this case, specifically Winkfield's repeated misconduct and the lack of any mitigating factors, I would rely on a different line of cases to impose what I believe is the appropriate sanction: permanent disbarment.

{¶ 58} In *Disciplinary Counsel v. Rutherford*, 154 Ohio St.3d 78, 2018-Ohio-2680, 111 N.E.3d 1131, under circumstances similar to those in this case, this court found that it was appropriate, in the absence of any mitigating factors, to permanently disbar an attorney who had been suspended four times prior and found in contempt of an order from this court.

{¶ 59} In *Disciplinary Counsel v. Longino*, 128 Ohio St.3d 426, 2011-Ohio-1524, 945 N.E.2d 1040, this court permanently disbarred an attorney who had an "extraordinary record of misconduct." *Id.* at ¶ 4. What is extraordinary is that Longino had "48 violations of the Ohio Rules of Professional Conduct," *id.* at ¶ 39, while Winkfield now has 68 violations to his name. It is also worth pointing out that in *Longino*, we rejected that attorney's request to impose a lesser sanction. Considering the "sheer volume of her misconduct," *id.* at ¶ 39, and the "absence of

20

mitigating factors," *id.* at ¶ 40, we concluded that permanent disbarment was the appropriate sanction there. *Id.* at ¶ 40.

{¶ 60} Because the primary purpose of disciplinary sanctions is to protect the public from unethical lawyers, *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 10, this court should, as it has in the past, impose the sanction of permanent disbarment.

### III. Conclusion

{¶ 61} I fervently believe in protecting people from attorneys like Winkfield who have *repeatedly* and *unabashedly* shown themselves to be unable to fulfill their ethical duties. Under these facts, an indefinite suspension, which leaves open the possibility that Winkfield could someday return to practice law in Ohio, belies this court's responsibility to the citizens of this state who rely on it to police the legal profession and protect them from attorney misconduct and malfeasance. Permanent disbarment, in my opinion, is more appropriate.

{¶ 62} Enough is enough. I respectfully dissent.

O'CONNOR, C.J., concurs in the foregoing opinion.

_____

Freund, Freeze & Arnold, L.P.A., and Jennifer L. Wilson; Barbara Jo Petrella; Judith M. McInturff Co., L.P.A., and Judith M. McInturff; and Kent Markus, Bar Counsel, and A. Alysha Clous, Assistant Bar Counsel, for relator.

Lawrence Winkfield, pro se.

_____