[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lorain Cty. Bar Assn. v. Weir*, Slip Opinion No. 2020-Ohio-3324.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3324

LORAIN COUNTY BAR ASSOCIATION *v.* WEIR.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lorain Cty. Bar Assn. v. Weir*, Slip Opinion No. 2020-Ohio-3324.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct and the Rules for the Government of the Bar—Indefinite suspension.*

(No. 2019-0150—Submitted April 8, 2020—Decided June 17, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2018-069.

_____

**Per Curiam.**

{¶ 1} Respondent, Jeffrey Hile Weir II, of Lorain, Ohio, Attorney Registration No. 0067470, was admitted to the practice of law in Ohio in 1997.

{¶ 2} In 2005, we briefly suspended Weir's license based on his failure to timely register for the 2005-2007 biennium. *In re Attorney Registration Suspension*

*of Weir*, 107 Ohio St.3d 1431, 2005-Ohio-6408, 838 N.E.2d 671, *reinstatement granted*, 107 Ohio St.3d 1705, 2006-Ohio-13, 840 N.E.2d 209.

{¶ **3**} On June 5, 2019, we suspended his license for one year, with the final six months stayed on conditions, for misconduct that included losing a client's settlement check, failing to reasonably communicate with the client, failing to cooperate in the disciplinary investigation, and failing to provide competent representation in a different client matter. *Lorain Cty. Bar Assn. v. Weir*, 156 Ohio St.3d 566, 2019-Ohio-2151, 130 N.E.3d 275. We later found him in contempt because he had not timely complied with our disciplinary order. 156 Ohio St.3d 1481, 2019-Ohio-3171, 129 N.E.3d 447.

{¶ **4**} In December 2018—while Weir's prior disciplinary case was pending in this court—relator, Lorain County Bar Association, charged Weir with professional misconduct in three additional client matters. Weir failed to answer the complaint, and on March 1, 2019, we imposed an interim default suspension pursuant to Gov.Bar R. V(14)(B)(1). 156 Ohio St.3d 1252, 2019-Ohio-728, 125 N.E.3d 976. Weir moved for leave to answer relator's complaint, and on May 28, 2019, we granted his motion and remanded the case to the Board of Professional Conduct, although we kept his interim default suspension in place. 155 Ohio St.3d 1466, 2019-Ohio-2057, 122 N.E.3d 1289.

{¶ **5**} In August 2019, relator amended its complaint to include allegations asserted in two new grievances, although relator subsequently voluntarily dismissed the allegations relating to one of those grievances. The matter proceeded to a hearing before a three-member panel of the board at which Weir and five grievants testified. Based on the hearing evidence, the board issued a report finding that Weir engaged in the charged misconduct and recommending that we indefinitely suspend him from the practice of law, with no credit for the time he has served under his interim default suspension, and order that he pay restitution to a former client. Neither party filed objections to the board's report.

{¶ 6} Based on our review of the record, we adopt the board's findings and recommended sanction.

**Misconduct**

{¶ 7} The board found that Weir committed similar professional misconduct in four client matters. Primarily, he neglected those clients and then failed to cooperate in the ensuing disciplinary investigations. His handling of Sunseraray Gilmore's matter is a representative example of his misconduct.

{¶ 8} In late 2017, Gilmore paid Weir $500 to file documents for her grandmother's estate and prepare an agreement transferring her grandmother's home to Gilmore's cousin Ronald Johnson. From February through June 2018, Gilmore sent Weir multiple e-mails requesting an update, but Weir failed to reply.

{¶ 9} By June 2018, after Weir had failed to take any action on Gilmore's request to transfer her grandmother's home, Gilmore abandoned that idea and focused on probating the will. The following month, Weir communicated with Gilmore about some research he had conducted on her grandmother's property. But for several months thereafter, Gilmore did not hear from him. In December 2018 and January 2019, she sent him multiple unanswered e-mails requesting that he move forward with filing the estate and update her when he had done so.

{¶ 10} In mid-February 2019, Weir e-mailed Gilmore two questions relating to the estate and Gilmore responded 30 minutes later. At that point, Weir admittedly had sufficient information to file the estate. On May 3, 2019, Gilmore sent Weir another unanswered e-mail requesting an update on the matter. Six days later, she sent him an e-mail stating that unless he filed the estate or returned her documents and $500 within 30 days, she would file a grievance against him. Thirty-one days later, Weir advised Gilmore that his license had been suspended and he was therefore unable to continue the representation. He also claimed that his legal services had exceeded her initial $500 payment but offered to refund half of that payment to resolve the matter.

**{¶ 11}** Gilmore then discovered that we had imposed Weir's interim default suspension several months earlier—on March 1—although Weir had failed to notify her. She again requested the return of her file. But by that point, Weir could not locate the documents Gilmore had given him, including her grandmother's original will. He never probated the estate or refunded any portion of Gilmore's fee. And after Gilmore filed a grievance, Weir failed to submit a formal response to relator.

**{¶ 12}** Based on this conduct, the board found that Weir violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from a client), 1.4(a)(5) (requiring a lawyer to consult with a client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted), 1.16(d) (requiring a lawyer to promptly deliver client papers and property upon termination of a representation), and 8.1(b) and Gov.Bar R. V(9)(G) (both requiring a lawyer to cooperate with a disciplinary investigation). In addition, because Gilmore had agreed that Weir should refund half of her initial payment to either her or Johnson, the board concluded that Weir owes Gilmore or Johnson restitution in the amount of $250.

**{¶ 13}** As noted above, the board found that Weir committed similar misconduct in three other client matters. In one matter, he failed to attend the client's citation hearing in an estate case, failed to communicate with the client in advance of the hearing, and failed to return the client's phone calls, resulting in additional violations of Prof.Cond.R. 1.3, 1.4(a)(3), and 1.4(a)(4). Weir violated the same rules in the second matter by failing to file an important document in a client's bankruptcy case and then failing to respond to the client's attempts to reach him. And in the third matter, he failed to reasonably communicate with his clients

regarding their civil case, failed to properly explain discovery filings and the consequences of a voluntary dismissal, and upon termination of the representation, failed to return their file, resulting in violations of Prof.Cond.R. 1.4(a) (requiring a lawyer to reasonably communicate with a client), 1.4(b) (requiring a lawyer to explain a matter to the extent reasonably necessary to permit a client to make informed decisions regarding the representation), and 1.16(d). In each of those matters, Weir also violated Prof.Cond.R. 8.1(b) and Gov.Bar R. V(9)(G) by failing to cooperate in relator's investigation of the grievances filed by his former clients.

{¶ 14} Finally, at this disciplinary hearing, Weir acknowledged that he had failed to properly notify clients that he lacked malpractice insurance. The board therefore found four violations of Prof.Cond.R. 1.4(c) (requiring a lawyer to inform a client if the lawyer does not maintain professional-liability insurance and obtain a signed acknowledgment of that notice from the client).

{¶ 15} We agree with the board's findings of misconduct.

**Sanction**

{¶ 16} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 17} As aggravating factors, the board found that Weir has prior discipline and had engaged in a pattern of misconduct, committed multiple offenses, and failed to cooperate in relator's disciplinary investigations. *See* Gov.Bar R. V(13)(B)(1), (3), (4), and (5). The board also noted that Weir had engaged in the unauthorized practice of law. Specifically, two months after we imposed his interim default suspension, Weir sent a letter under the letterhead "JEFFREY H. WEIR, ESQ." to the owners of vacant property in Lorain. Weir indicated that he represented a "client" who was offering to purchase the property, and Weir sent a proposed quit-claim deed, which the property owners returned. At

his disciplinary hearing, Weir admitted that his preparation of the quit-claim deed constituted the practice of law. He also acknowledged that a recipient of his letter might have perceived "ESQ." to mean that he was a licensed attorney. He has since removed the title from his letterhead. *See Cincinnati Bar Assn. v. Wiest*, 148 Ohio St.3d 683, 2016-Ohio-8166, 72 N.E.3d 621, ¶ 13-16, 37 (considering uncharged misconduct only as an aggravating factor).

{¶ 18} As for mitigating factors, the board found that Weir had lacked a dishonest or selfish motive and that in contrast to his refusal to participate in relator's investigations, Weir had displayed a cooperative attitude during his disciplinary hearing and acknowledged some of his misconduct. *See* Gov.Bar R. V(13)(C)(2) and (4). Although the board found—and we agree—that Weir did not establish the existence of a qualifying mental disorder under Gov.Bar R. V(13)(C)(7), the board noted that Weir had entered into a contract with the Ohio Lawyers Assistance Program ("OLAP") to address mental-health issues.

{¶ 19} The board recommends that we impose an indefinite suspension with no credit for the time Weir has served under his interim default suspension, order him to make restitution to Gilmore or Johnson, and place conditions on his reinstatement. In support of its recommended sanction, the board cites our "general rule that 'an attorney's neglect of legal matters and failure to cooperate in the ensuing disciplinary investigation warrant an indefinite suspension,' " *Disciplinary Counsel v. Delay*, 157 Ohio St.3d 137, 2019-Ohio-2955, 132 N.E.3d 680, ¶ 38, quoting *Disciplinary Counsel v. Mathewson*, 113 Ohio St.3d 365, 2007-Ohio-2076, 865 N.E.2d 891, ¶ 19. "We have found that sanction to be appropriate even when an attorney has engaged in additional acts of misconduct." *Lorain Cty. Bar Assn. v. Johnson*, 151 Ohio St.3d 448, 2017-Ohio-6889, 90 N.E.3d 837, ¶ 39.

{¶ 20} Here, in addition to engaging in a pattern of neglect and noncooperation that led to two disciplinary cases, Weir failed to return his clients' property upon termination of his representation and failed to properly notify clients

6

that he lacked malpractice insurance. In light of his misconduct and the other aggravating factors present in this case, we find no reason to deviate from our general rule. Nor do we see any compelling reason to award him credit for the time he has served under his interim default suspension. We therefore adopt the board's recommended sanction. *See id.* at ¶ 40-41 (indefinitely suspending an attorney, with no credit for time served under an interim default suspension, for engaging in a pattern of neglect and noncooperation and committing other professional misconduct, including failing to return clients' unearned fees and failing to properly notify clients that he lacked malpractice insurance).

**Conclusion**

{¶ 21} For the reasons explained above, Jeffrey Hile Weir II is indefinitely suspended from the practice of law in Ohio with no credit for the time he has served under the interim default suspension we imposed on March 1, 2019. Within 60 days of our disciplinary order, Weir shall submit proof to relator that he has made restitution in the amount of $250 to Sunseraray Gilmore or Ronald Johnson. In addition to the requirements of Gov.Bar R. V(25), Weir's reinstatement shall be subject to the requirements that he provide (1) proof of compliance with his OLAP contract, (2) proof that he followed any treatment or counseling recommendations made by a qualified healthcare professional, and (3) an opinion from a qualified healthcare professional that he is capable of returning to the competent, ethical, and professional practice of law. Costs are taxed to Weir.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

––––––––––––––––

O'Toole, McLaughlin, Dooley & Pecora Co., L.P.A., and Matthew A. Dooley; and Wickens, Herzer, Panza, Daniel A. Cook, and Malorie A. Alverson, for relator.

Jeffrey H. Weir II, pro se.

_____